Joann F. **CHRISTIAN**, individually and as Administratrix of the Estate of Bruce J. Christian, Nicole C. Christian, Lyndsey M. Christian, and Bruce J. Christian, Jr., Plaintiffs Below, Appellants,

v.

**COUNSELING RESOURCE ASSOCIATES, INC.**, a Delaware Corporation and J. Roy Cannon, LPCMH and Arlen Stone, M.D., individually and doing business as Abby Family Practice, and The Family Practice Center of New Castle, P.A., a Delaware Professional Association, individually and doing business as Abby Family Practice, Defendants Below, Appellees.

No. 460, 2011.

Supreme Court of Delaware.

Submitted: Oct. 10, 2012.

Decided: Jan. 2, 2013.

Revised: March 26, 2013.

Albert M. Greto, Esquire (argued), Law Offices of Albert M. Greto, Esquire, Wilmington, Delaware, for Appellants. Of Counsel: Richard J. Heleniak, Esquire (argued), Messa & Associates, P.C., Philadelphia, Pennsylvania, for Appellants.

John A. Elzufon, Esquire (argued), and Andrea C. Rodgers, Esquire, Elzufon Austin Reardon, Tarlov & Mondell, P.A., Wilmington, Delaware for Appellees Counseling Resource Associates, Inc. and J. Roy Cannon, LPCMH.

John D. Balaguer, Esquire (argued), White and Williams LLP, Wilmington, Delaware for Appellees Arlen Stone, M.D. and The Family Practice Center of New Castle, P.A.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

In this appeal we again consider how to balance the strong policy in favor of deciding cases on the merits against the need to resolve the trial courts' high volume of cases in a timely manner. The trial court precluded appellants' experts from testifying at trial because appellants failed to provide the experts' reports in accordance with the trial scheduling order. Without any expert testimony, appellants' claims failed as a matter of law, and judgment was entered for appellees. But appellants had requested a conference with the trial court six months before the trial date to discuss the need to revise the scheduling order. The trial court refused to meet with counsel or change the trial date. We hold that the trial court abused its discretion. A conference held at that point would have allowed the trial court to determine whether the circumstances justified a new trial date. If not, the trial court could have set new discovery deadlines that would have maintained the original trial date.

█ This is one of four appeals that the Court has considered together because, in each case, the plaintiff's claims were dismissed without being heard on the merits.[1] For the past two years, the trial courts have been applying the factors set forth in *Drejka v. Hitchens Tire Service Inc.*[2] when deciding whether a case should be dismissed for the attorneys' failure to obey scheduling orders. Because experience has shown that sanctions are not always effective, to achieve the goal of eliminating this problem, the Court has determined that it is necessary to refine the *Drejka* analysis. Henceforth, parties who ignore or extend scheduling deadlines without promptly consulting the trial court, will do so at their own risk. In other words, any party that grants an informal extension to opposing counsel will be precluded from seeking relief from the court with respect to any deadlines in the scheduling order. By the same token, if the trial court is asked to extend any deadlines in the scheduling order, the extension should not alter the trial date. Counsel may face a compressed time period to complete discovery, or the filing of dispositive motions, but the most important aspect of the scheduling order—the trial date—will be preserved. In the unusual circumstance where the trial court does decide to postpone the trial date, litigants should expect that the trial will be rescheduled after all other trials already scheduled on the court's docket.

**Factual and Procedural Background**

In late December 2008, Bruce Christian, Sr. (Decedent) was taking the prescription drug Effexor and "having bad thoughts."[3] He also was having tremors and headaches. Joann Christian, Decedent's wife, was concerned. She removed the one gun she knew was in the house, and contacted Dr. Arlen Stone, Decedent's primary care physician. Stone spoke with Decedent and told him to make an appointment to come into Stone's office. Shortly after New Year's Day, Decedent met with J. Roy Cannon, a mental health counselor. Decedent denied having any suicidal thoughts and also denied having any ammunition for a gun. A few days later, before his second scheduled appointment with Cannon, Decedent fatally shot himself.

On October 20, 2009, the Christians filed a medical negligence action against Stone,

---

1. *Hill v. DuShuttle,* 58 A.3d 403 (Del.2013); *Adams v. Aidoo,* 58 A.3d 410 (Del.2013); and *Keener v. Isken,* 58 A.3d 407 (Del.2013).

2. 15 A.3d 1221 (Del.2010).

3. Appellees' Appendix, B–25.

Family Practice Center of New Castle County, Cannon and Counseling Resources Associates, Inc. (collectively, Health Care Providers). In February 2010, the trial court issued a scheduling order that required, among other things, the Christians' expert report to be filed by December 3, 2010; discovery to be concluded on February 4, 2011; and trial to begin on August 1, 2011.

At Dr. Stone's deposition in February 2010, counsel for the Christians realized that he knew Cannon. For that reason, counsel advised the Christians that he could not represent them, and tried to find other attorneys to take the case. Shortly before the Christians retained new counsel, in November 2010, the parties filed a stipulation to amend the scheduling order. The amendment, which was approved by the trial court, extended the deadlines for the filing of expert reports and the discovery cut-off date. All other deadlines remained unchanged.

Local counsel entered an appearance for the Christians on December 23, 2010. The parties agreed informally that the Christians could file their expert report by the end of January 2011—three weeks after the extended deadline set forth in the amended scheduling order. The Christians did not file their expert report. But, in early February 2011, their new counsel wrote to the trial court requesting a teleconference to discuss the discovery schedule and the fact that new counsel and counsel for Cannon both had conflicts with the scheduled trial date. The trial court refused to schedule a conference, and advised the parties that the trial date would not be changed.

Over the next five months, the parties dealt with discovery issues on their own. As of April 2011, the Christians still had not identified their experts or provided expert reports. The Health Care Provid-

ers set up a teleconference on April 29, 2011, to work out new discovery deadlines. During the month of May, the Christians identified three experts and provided two "preliminary disclosures" of their experts' opinions. Information concerning the third expert's opinions was provided in mid-June. The experts were made available for depositions in late July. On June 22, 2011, five weeks before the scheduled trial date, the Health Care Providers filed a motion to preclude the Christians' expert testimony. They claimed to have been severely prejudiced by the Christians' delay. The trial court granted that motion and a related motion for summary judgment. This appeal followed.

## Discussion

The trial court issued a 32–page opinion explaining its decision granting the Health Care Providers' motion to preclude the Christian's expert testimony. The court reviewed the Christians' repeated failure to comply with both the trial scheduling order deadlines and the Health Care Providers' informal extensions of those deadlines. The Christians tried to justify their conduct by pointing out that they spent several months trying to find new counsel. The trial court rejected that excuse, noting that the need for new counsel did not explain the repeated delays after new counsel was retained. The trial court reviewed the six factors set forth in *Drejka*, and concluded that the Health Care Providers would suffer significant prejudice if required to prepare for trial in the time remaining before the scheduled trial date. The trial court also decided that it would be inappropriate to change the trial date because that would be a serious disservice to the Health Care Providers, the court and other litigants.

■ This Court reviews a trial court's decision refusing to modify a trial schedul-

ing order for abuse of discretion.[4] In *Drejka*, we held that the trial court should balance six factors in deciding whether to dismiss a case for discovery violations:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal ...; and (6) the meritoriousness of the claim or defense.[5]

As noted, the trial court considered these factors. But, by the time the trial court addressed this matter, there was little that could be done. The trial court was unwilling to reschedule the trial date. With that option unavailable, it was inevitable that the Health Care Providers would be hard pressed to prepare for trial. It also became clear that other sanctions would not accomplish anything. Dismissal was the only remaining choice, and we cannot say that the trial court abused its discretion in reaching that conclusion.

■ The problem is that the trial court should have addressed the Christians' concerns five months earlier, when there would have been time to avoid dismissal. In early February, after the Christians' new counsel had missed the expert discovery deadline, counsel requested a conference to resolve scheduling problems, including conflicts with respect to the trial date. Without hearing from either side, the trial court decided that the Christians only were asking for a new trial date, and that a new trial date would not be granted.

It is true that the Christians wanted to reschedule the trial, but they also wanted more than that. The Christians' new counsel wanted to discuss the problems that were delaying discovery, and to explain why a new trial date was needed. Had the Christians been given that opportunity, perhaps they would have convinced the court that the case should be rescheduled. Even if not, the trial court would have been able to set new discovery deadlines, and, for example, warn that fines would be imposed if those deadlines were missed. The trial court's refusal to step in when asked to resolve discovery difficulties, and thereby avoid the ultimate sanction of dismissal, was an abuse of discretion.

In *Drejka*, this Court identified factors to be considered by the trial courts when considering whether to dismiss a case for discovery violations. But experience has shown that it is difficult to apply the *Drejka* factors consistently. As a result, we think it appropriate to add some refinements—practice guidelines that will afford greater predictability to litigants and the trial courts.

Trial scheduling orders are typically issued as much as one year or more before the trial date, which is selected after input from counsel. With discovery deadlines in place, the trial court may have little or no involvement in the case until shortly before trial, when motions *in limine*, or other potentially dispositive motions must be filed. This procedure is efficient and works well in cases where the parties adhere to the discovery deadlines. There are times, however, when one or all of the parties miss those deadlines. In Delaware, where civility is a cherished value, attorneys are likely to grant their own extensions to opposing counsel without "bothering" the trial court. That practice is commendable, and fosters good will.

---

4. *Coleman v. PricewaterhouseCoopers, LLC,* 902 A.2d 1102, 1107 (Del.2006).

5. *Drejka v. Hitchens Tire Service Inc.,* 15 A.3d at 1224.

But it also leads to the predicament that occurred here. The Health Care Providers kept making accommodations until they ran out of time. Indeed, the Christians were actively scheduling depositions when the Health Care Providers, without warning, filed a motion to preclude experts.

■ To avoid this problem in the future, we now advise litigants that, if they act without court approval, they do so at their own risk. If one party misses a discovery deadline, opposing counsel will have two choices—resolve the matter informally or promptly notify the court. If counsel contacts the court, that contact can take the form of a motion to compel, a proposal to amend the scheduling order, or a request for a conference. Any one of these approaches will alert the trial court to the fact that discovery is not proceeding smoothly. With that knowledge, the trial court will be able to take whatever steps are necessary to resolve the problem in a timely fashion.

■ If the party chooses not to involve the court, that party will be deemed to have waived the right to contest any late filings by opposing counsel from that time forward. There will be no motions to compel, motions for sanctions, motions to preclude evidence, or motions to continue the trial. It is entirely possible, under this scenario, that some vital discovery will not be produced until the day before trial. Still, the party prejudiced by the delay accepts that risk by failing to promptly alert the trial court when the first discovery deadline passes.

One could argue that this approach will only provoke more motion practice and create bad will among the litigants. There may be more motions, but they will serve an important purpose. As matters stand now, litigants who are given informal extensions by opposing counsel never know when they are on their last "final" extension. After cooperating for some period, opposing counsel is free to change course and file a motion to preclude at any time. By that point, it may be too late to preserve the trial date.

The parties will be able to avoid motion practice and ill will by agreeing to reasonable extension requests, as in the past. The difference is that they must promptly file a proposed amended scheduling order for the trial court's signature. By agreeing to the new scheduling order, both sides represent to the trial court that they can meet the new deadlines and be ready for trial. If the trial court thinks that the new schedule is too ambitious, a conference should resolve those concerns.

Finally, we note that the trial court in this case was unwilling to consider rescheduling the trial date. When time is set aside for a trial and the trial is continued, the original trial days are lost. The trial court can turn to other matters, but other litigants awaiting trial generally cannot be substituted. Thus, rescheduling a trial date usually means setting a date that is often another year or more away, after all other scheduled trials. In this case, the trial court indicated that such a result would be a disservice to the Healthcare Providers, other litigants and the court. But the Healthcare Providers contributed to the problem, and other litigants would not be affected if the new trial were set after all scheduled trials. To be sure, the court's control of its docket would be compromised, and that is important. But that factor should not be controlling in all cases. The trial court retains its discretion to address discovery timing issues as set forth in this opinion and retain the trial date, or to reschedule the trial.

### Conclusion

Based on the foregoing, the judgment of the Superior Court is reversed and this

matter is remanded for further action in accordance with this opinion. Jurisdiction is not retained.