**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

**JOHN A. PARKINS, JR.**
*JUDGE*

**NEW CASTLE COUNTY COURTHOUSE**
**500 NORTH KING STREET, SUITE 10400**
**WILMINGTON, DELAWARE 19801-3733**
**TELEPHONE: (302) 255-2584**

October 24, 2016

Nabil Abdallah
48 Fairway Road
Apartment 3A
Newark, Delaware 19711

Wilson B. Davis, Esquire
Tanisha L. Merced, Esquire
New Castle County Law Department
87 Reads Way
New Castle, Delaware 19720-1648

Re: **Nabil Abdallah**
**v. Joseph Rago**
**and New Castle County**
**C. A. No. N15C-03-043 JAP**

Dear Mr. Abdallah and Counsel:

This is a ruling on Defendant's motion to dismiss for failure to prosecute.

*Background*

This personal injury case arises from a November 28, 2013 motor vehicle accident. At approximately 3:00 a.m. Defendant Joseph Rago, a Master Corporal in the New Castle County police department, was responding to an emergency in his patrol vehicle. His emergency lights were on and his siren was activated when he entered an intersection controlled by a traffic light. Plaintiff, who had the green light, entered the intersection and his vehicle was struck by the County Police car.

Plaintiff, then represented by counsel, filed suit on March 6, 2015, and Defendants' counsel deposed him the following October. At his deposition, Plaintiff testified under oath that he was unable to work or drive as a result of the injuries he suffered in the accident. Unknown to Plaintiff, Plaintiff was surveilled immediately after the deposition. He was videotaped leaving the building in which the deposition took place, driving to a nearby industrial park where he entered and drove a commercial vehicle for a company known as "All American Logistic." A few days after the deposition, Plaintiff, his counsel, and Defendants' counsel appeared at mediation. During the mediation the defendants showed Plaintiff the videotape, whereupon Plaintiff abruptly left the mediation. A few days later Defendants' counsel was contacted by Plaintiff's counsel or the mediator (it is not clear which) and the parties worked out a settlement. Not long thereafter, Plaintiff's counsel wrote to the court that the matter had been settled.

Apparently Mr. Abdallah had second thoughts about the settlement and refused to sign the papers. Defendants eventually filed a motion to enforce settlement, and Plaintiff's counsel filed a motion to withdraw his appearance. The court conducted a hearing attended by Defendants' counsel, Plaintiff's counsel, and the Plaintiff himself. The court granted Plaintiff's counsel to withdraw and denied Defendants' motion to enforce settlement. The court advised Plaintiff of his right to retain a new attorney or represent himself. Mr. Abdallah never found an attorney willing to represent him, so he proceeded *pro se* throughout the rest of the case.

Thereafter the case was replete with Plaintiff's repeated failures to comply with his obligations, even though the court took pains to explain those obligations and advise him of the consequences of a failure to do so. The following summarizes the progress (actually the lack thereof) of the matter after Mr. Abdallah undertook to represent himself.

- At the February 26, 2016 hearing in which the court granted Plaintiff's counsel's motion to withdraw, the court directed Plaintiff (who was present at that hearing) to appear in court for a status conference on March 17, 2016. The same day the court sent Mr. Abdallah and Defendant's counsel a letter confirming the March 17 date and directing them to appear.

- Mr. Abdallah did not appear at the March 17 conference nor did he advise the court he would be unable to attend. Defendants' counsel was present. At the conference the court scheduled the pretrial conference for April 12, 2016 and required submission of the pretrial order no later than April 7, 2016.

- The same day as the conference the court sent a letter to Mr. Abdallah advising him of the deadlines and telling him that "[f]ailure to comply with these deadlines will result in **dismissal** of these claims." (bold in original)

- Mr. Abdallah did not appear at the pretrial conference. Even though not required to do so, prior to the scheduled conference Defendants' counsel prepared a draft pretrial order and sent it

to Mr. Abdallah. Counsel reported they had heard nothing from Mr. Abdallah since February 26, 2016.

• The court would have been justified in dismissing the matter for failure to prosecute at this juncture. Nonetheless it decided to give Mr. Abdallah another chance. As such, it entered an order directing Mr. Abdallah to show cause why his case should not be dismissed for failure to prosecute.

• Mr. Abdallah timely responded to the order. In the response he wrote:

> Please be advised that [it] was only upon receiving and reading the letter of "ORDER" which was sent to me by yourself or the Superior Court of the State of Delaware that I became aware or fully aware that I had failed to meet letter's deadlines which I was warned about in its March 17, 2016 scheduling letter.

Later in his response he continued:

> Mr. Judge Parkins, please be advised that I did not receive any documentation informing me to appear before the court for a pretrial Conference at/on April 16, 2016 and therefore I had no knowledge that I was to do so.

• On April 29, 2016, the court reviewed the evidence and found that Mr. Abdallah had received the notices and that his response to the order to show cause was without merit. Despite this, the court still did not dismiss the case. Rather, it found that sanctions were in order. The court declined to enter sanctions until Mr. Abdallah and Defendants had an

4

opportunity to weigh in on the issue of sanctions. It therefore scheduled a hearing on sanctions for May 16, 2016.

- Mr. Abdallah attended the May 16 hearing. Here, the court gave Mr. Abdallah yet another chance. It ordered him to pay the county $200 (in two $100 monthly increments) to partially defray the cost of having to send its attorneys to attend the hearing which Mr. Abdallah did not attend. It also ordered Mr. Abdallah to produce copies of his income tax returns (which were relevant to his claims for lost wages) by June 30, 2016 and expert reports by July 30, 2016. The court confirmed this in a written order issued the same day.[1] At the hearing the court explained the importance of the expert reports and the consequences of not providing them:

> THE COURT: Mr. Abdallah, I don't mean to lecture you but I need to let you know, physicians don't need to do this and they don't do it for free. You need to make arrangements to pay him for that and you need to do that sooner rather than later because he needs to put this on his calendar. And what I don't want is to have everybody get ready for trial and start the first day of trial, only to find out that you haven't made arrangements to have your physician come and testify.
>
> MR. ABDALLAH: One main thing I'm just curious to know is that I just want to know without a physician coming in and testifying for me, does that mean that my case cannot continue, can I still be able to go to trial?

---

[1] As testament to the court's leniency, the court gave Mr. Abdallah an extra day to produce his expert witness reports, requesting them on or before July 31, 2016.

THE COURT: You cannot go to trial without a physician. And you are also going to have to get this physician to write a report and send it to the County's attorneys and you have to pay the physician to do that, do you understand that?

MR. ABDALLAH: Understood.
...
THE COURT: Now, Mr. Abdallah, you need to provide reports from your expert witnesses, written reports, and you need to do that by July 30th, do you understand that?

MR. ABDALLAH: Yes.

THE COURT: That means you have to make arrangements with your physician and whoever else you are going to call an as expert witness, you need to make arrangements to pay them if they want to be paid and they have to write a report about your condition and what they will testify to at trial.

MR. ABDALLAH: Understood, Your Honor.

THE COURT: If you don't do that, if you don't comply with that deadline, your case will be dismissed.

- Mr. Abdallah made the two $100 payments but failed to produce his tax returns by the June 30 deadline. Defendants moved to dismiss because Mr. Abdallah had not complied with the June 30 deadline for producing his tax returns. The court deferred ruling on that motion on the remote chance that Mr. Abdallah would provide expert discovery by the July 30 deadline and this case could finally be heard on the merits.

- Mr. Abdallah did not comply with the July 30 deadline, so on August 23, 2016 the defendants again moved to dismiss. The

court conducted a hearing on that motion on September 19, 2016 which Mr. Abdallah attended. He was given a chance to explain why he had not complied and why his case should not be dismissed. He gave unsatisfactory reasons for either.

- Mr. Abdallah did not appear at the pre-trial conference scheduled for October 21, 2016.

*Analysis and Decision*

The court has "discretion to resolve scheduling issues and to control its own docket."[2] Pursuant to Superior Court Civil Rule 16, parties must adhere to the trial judge's scheduling order and conduct discovery "in an orderly fashion."[3] A parties' failure to obey a scheduling order permits the court to impose appropriate sanctions. Among the various sanctions available to the court is the sanction of dismissal.[4] The court however does not have unfettered discretion to sanction a party by dismissing the case.[5] Indeed the "sanction of dismissal is severe and courts are and have been reluctant to apply it except as a last resort."[6]

Superior Court Civil Rule 41(b) states that where there is a "failure of the plaintiff to prosecute or to comply with these Rules, or any order of Court, a defendant may move for dismissal of an action . . . ."[7] The court is mindful of the *Christian* and *Drejka* cases decided by the Delaware Supreme

---

[2] *Sammons v. Doctors for Emergency Servs.*, P.A., 913 A.2d 519, 528 (Del. 2006).
[3] *Dillulio v. Reece*, 2014 WL 1760318, at *3 (Del. Super. 2014).
[4] *Id.*
[5] *Drejka v. Hitchens Tire Service, Inc.* 15 A.3d 1221 (Del. 2010) (illuminating that the court should weigh certain factors prior to a determination of a sanction of dismissal).
[6] *Hoag v. Amex Assurance Co.*, 953 A.2d 713, 717 (Del. 2008).
[7] Del. Super. Ct. Rule 41(b).

Court.[8]  In general, those decisions stand for the proposition that a case should not be dismissed before trial because of a failure to obey a scheduling order when the prejudice caused by the offending conduct can be cured by a lesser sanction. To this end the court has examined the following: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary; (3) a history of dilatoriness; (4) whether the conduct was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal; and (6) the merits of the claim or defense.[9]

The court finds that there are no sanctions short of dismissal which will remedy the prejudice to defendants and protect the court's ability to manage its docket.  The delay here is solely attributable to Plaintiff himself. There is prejudice to the defendants, who are just as entitled as Plaintiff to have the claims resolved is a timely fashion. The record here is replete with delays and defaults by Plaintiff, and the court has been generous to a fault in allowing him second chances.  The matter has gotten to the point where the court finds that no sanction less than dismissal will be adequate.[10] The

---

[8]  *Drejka v. Hitchens Tire Serv., Inc.*, 15 A.3d 1221 (Del. 2010); *Christian v. Counseling Resource Assoc., Inc.*, 60 A.3d 1083 (Del. 2013); *see, e.g.*, *Granton v. Johnson*, 2014 WL 7148786, at *2 (Del. Super. 2014) ("The Supreme Court's imploration in *Draper v. Med. Ctr. of Del.* (a case contemplating Rule 41(b)) that courts attempt to "get the case back on track," is akin to its motivation in *Christian* to curtail the hasty disposition of cases, without considering their merits.").

[9]  *Drejka*, 15 A.3d at 1224.

[10] *Gunzl v. One Off Rod & Custom, Inc.*, 2015 WL 59749, at *1–2 (Del. 2015) (where the court explained to the plaintiff the discovery process, the need for an expert to support his claims, and granted plaintiff several time extensions to comply with the expert deadline outlined in the scheduling order, the court was in its discretion to dismiss the case); *Harrison v. Del. Supermarkets, Inc.*, 2014 WL 2718830, at *1–2 (the court was in its discretion to dismiss the case where several extensions of time were granted to *pro se* plaintiff and the court advised plaintiff that if he did not get the correct expert to testify by the amended scheduling order the complaint would be dismissed); *Jonason v. North Silver Lake, LLC*, 2014 WL

court has inherent power to dismiss an action for failure to prosecute or failure to comply with a scheduling order in order to "manage its own affairs and to achieve the orderly expeditious disposition of its own business,"[11] and it will do so here.[12]

For these reasons, the Defendant's motion to dismiss for failure to prosecute is **GRANTED**.

Very truly yours,

John A. Parkins, Jr.

oc:    Prothonotary

---

4782814, at *1 (Del. Super. 2014) ((1) plaintiff failed to attend deposition after several forms of notice; (2) plaintiff did not comply with trial scheduling order stating that there was an expert discovery cut-off deadline for plaintiff; and (3) defendant has not received any communications from plaintiff).

[11] *Gebhart v. Ernest DiSabatino & Sons, Inc.*, 264 A.2d 157, 159 (Del. 1970).

[12] This power is not limited, and applies equally to *pro se* plaintiffs. *Adams v. Aidoo*, 58 A.3d 410, 413 (Del. 2013). Utilizing the balancing factors enumerated in *Drejka* the court found that a *pro se* plaintiff was personally responsible for her failure to provide discovery. The *pro se* litigant clearly understood what was required and the court carefully explained to her that she was not free to ignore interrogatories that she believed were irrelevant or personally invasive. Second, there was a history of dilatoriness. The trial court gave plaintiff numerous extensions, and she had no excuse for her failure to comply with the deadlines. Finally, because plaintiff's refusal to provide discovery was willful, it was apparent that no lesser sanctions would have induced compliance. *Id.*