# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| DIANE AND ROBERT VONDRASEK, | ) ) ) | |
| Appellants, | ) ) | |
| v. | ) ) | C.A. No. N16A-09-007 CEB |
| BOARD OF ADJUSTMENT OF THE CITY OF WILMINGTON AND SAM ROSAURI D/B/A ROSAURI BUILDERS & REMODELERS INC., | ) ) ) ) ) ) | |
| Appellees. | ) | |

Submitted: January 30, 2017
Decided: May 1, 2017

## ORDER

*Upon Consideration of Appeal from the*
*Board of Adjustment for the City of Wilmington*
**AFFIRMED**

This 1st day of May, 2017, the Court is asked here to review a decision of the Wilmington Zoning Board of Adjustment (the "Board") that approved a zoning variance for a homeowner to build a second story addition over its previously approved garage. We will affirm the decision of the Board with the following explanation.

1

## Factual Background

There are 2 adjoining row houses located at 1817 and 1819 Delaware Ave in the City of Wilmington. These houses are about 100 years old. From the record, it appears that they were substantially renovated in approximately 1995 because in that year, a large garage was built behind the two houses to accommodate vehicles parking at both properties. That garage construction required a zoning variance in the setback requirement in that neighborhood. The zoned setback is 15 feet. As a result of the zoning variance, the garage was permitted to come within 7 feet of the rear property line. That variance was granted before the incumbent owners purchased the property. The garage features a roof that peaks at the center, as is common for duplex style houses in the city.

The homeowners of 1817 Delaware Avenue sought to add a second floor room over the garage on their side of the property. They hired a contractor, Rosario Builders, who presented their request for the zoning variance to the City. They also solicited comment from the president of the local homeowner's association, who came to the hearing in support of the petition. The homeowners also produced 2 neighbors to speak in support of the petition.

As noted, there is already an existing variance in place for the single story garage. The variance sought here was only to add a second floor on the same footprint as the first floor garage that was previously approved.

The only opposition to the requested variance came from the adjoining property owner at 1819 Delaware Avenue, which shares the garage structure with 1817. These neighbors came to the hearing, with counsel, to protest that the proposed structure was inappropriate for the neighborhood, there was a possibility of snow or ice build-up where the second story structure at 1817 met the roof of the garage structure at 1819. These homeowners also protested that some of the plans suggested the second floor addition at 1817 would alter or move some of the structural supports on the 1819 side of the garage. Finally, they questioned whether a proper engineering study had been done to ensure that the existing garage would support a second floor above it.

After hearing from all parties and the neighbors as noted above, the Board voted 2-1 to grant the variance as requested. The owners of 1819 Delaware Avenue have appealed that decision by seeking a writ of certiorari.

**Standard of Review**

The record reviewable by the Superior Court on a common law writ of certiorari consists only of the complaint initiating the proceeding, any written answer or response, and the docket entries.[1] The Court is limited to a consideration of the record to determine whether the lower tribunal exceeded its jurisdiction,

---

[1] *See Maddrey v. Justice of Peace Court 13*, 956 A.2d 1204, 1216 (Del. 2008).

3

committed errors of law, or proceeded irregularly.[2] A decision will be reversed for an error of law committed by the lower tribunal when the record affirmatively shows that the lower tribunal has "proceeded illegally or manifestly contrary to law."[3] A decision will be reversed for irregularities of proceedings if the lower tribunal failed to create an adequate record to review.[4]

**Appellant's Failure to Name the Landowner is Fatal to this Appeal**

After Appellants filed their opening brief in this Court, the Board filed an answering brief attacking Appellants' failure to name the homeowner as a party. The Board sought dismissal of the appeal on grounds that this constituted a fatal error. In reply, Appellants argued that they named the petitioner in the zoning proceeding below (the contractor for the homeowner), the contractor was the homeowner's agent, the Board did not move to dismiss the writ and, if the Court was unpersuaded by those arguments, it should grant Appellants leave to amend the appeal, add the homeowners and rule that the amendment "relates back" under Superior Court Civil Rule 15.

---

[2] *Id.* at *1213.

[3] *Id.*

[4] *Christiana Town Ctr., LLC v. New Castle Cty.,* 865 A.2d 521 (Del. 2004) (internal citations omitted).

4

In *DiFebo v. Board of Adjustment of New Castle County*,[5] a neighbor, dissatisfied with a ruling of the County Board of Adjustment, sought certiorari review in Superior Court. Appellant's writ named the Board of Adjustment and the contractor that presented the case for approval, but not the landowner the contractor represented. That is precisely what happened here. The landowner is an indispensible party to a zoning dispute.[6]

In *Difebo*, the appellant sought to amend her pleadings to add the landowner. Here, the Appellants have not done so formally, although they do tell us that they sent copies of their appeal briefs to the landowners at the same time they filed their reply briefs in this court.

In *Difebo*, the trial court held that the amendment must be made within the same 30 days as the statute of limitations for filing for the writ. The Delaware Supreme Court overruled the trial court to this extent: it held that an amendment to the pleadings could be made pursuant to Rule 4(j) up to 120 days after the appeal was perfected, but only if the requirements of Rule 15(c) were met. In this case, the appeal was perfected on September 19, 2016, so under the strictures of Rules 4 and 15, an amended pleading would have to be filed on or before January 19, 2017. Even today, there is no amended pleading or motion to amend a pleading, and

---

[5] 132 A.3d 1154 (Del. 2016).

[6] *See, e.g., CCS Investors, LLC v. Brown*, 977 A.2d 301, 322 (Del. 2009); *Hackett v. Board of Adjustment of Rehoboth Beach*, 794 A.2d 596 (Del. 2002).

there certainly was no such pleading filed within the 120 days required under Rule 4(j).

Most importantly, in *Difebo*, the Delaware Supreme Court took on Appellants' central argument. Rule 15(c)(3) permits relation back of an amended complaint if the party to be added "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [them]." Appellants argue here, as did appellants in *Difebo*, that "appellants not naming the owner should be considered an error and not a deliberate strategy."[7] The *Difebo* Court said:

> The petitioner knew who owned the two properties, having been a neighbor of the property owners for over fifteen years. And the only excuse for not naming them is that her attorney did not research who the owners of the properties were and assumed that the property owners' engineer, Ramesh Batta—named as the applicant in the Board's Application for Public Hearing and the Board's Notice of Decision—was somehow also the owner of the properties despite her client knowing otherwise and despite the fact that the Application for Public Hearing clearly states that Batta was the applicant and the Paverds and Osbornes were the legal owners. That is not the sort of mistake that supports relation back under Delaware's Rule 15(c)(3).[8]

So, *even if* 120 days had not elapsed since the filing of the writ of certiorari, and *even if* the Appellants had filed or attempted to file an amended appeal naming

---

[7] Appellants' Reply Br. at 5, *citing Brown v. City of Wilmington Zoning Bd. Of Adjustment*, 2007 WL 1828261 at *10 (Del. Super. June 25, 2007).

[8] *Difebo*, 132 A.3d at 1158 (Del. 2016).

the property owners as respondents in the appeal, Appellants would still be out of Court because the "mistake" of not naming the owner was not a mistake recognized under Rule 15 in Delaware. The controlling precedent set forth in *Difebo* leaves the Court with no choice but to dismiss the appeal.[9]

Given our holding that the appeal must be dismissed, we would do well enough to leave the rest alone. But the Court appreciates that a procedural default with such dispositive consequences for the Appellant is at least unsettling,[10] the Court will add the following findings. While it is probably small solace to Appellant, the Court is certain that even if we had reached the merits of this petition, it would have been denied.

**Appellant Failed to Pass the Exceptional Practical Difficulty Analysis**

The parties are in agreement that the analytical framework for disposition of the merits of this appeal is provided by the Delaware Supreme Court's decision in

---

[9] While it is surprising that neither party cited the *Difebo* case to the Court, *Difebo* is not the only case holding that failure to name the landowner is an "unamendable defect" under Rule 15. *See, e.g., Hackett, supra,* 794 A.2d at 598; *Sussex Medical Investors, L.P. v. Delaware Health Resources Board,* 1997 WL 524065 (Del. Super. Apr. 8, 1997).

[10] The Court is acutely aware of the bias favoring decision of issues before it on their merits (*see, e.g., Hackett* 794 A.2d at 598) and embraces the Delaware Supreme Court's decision in *Drejka* and its progeny. *See, e.g., Drejka v. Hitchens Tire Service Inc.,* 5 A.3d 1221 (Del. 2010); *Christian v. Counseling Resource Associates, Inc.,* 60 A.3d 1083 (Del. 2013); *Hill v. DuShuttle,* 58 A.3d 403 (Del. 2013); *Adams v. Aidoo,* 58 A.3d 410 (Del. 2013); *Keener v. Isken,* 58 A.3d 407 (Del. 2013)(where plaintiff's claims were dismissed without being heard on the merits, the court considered the difficulty in balancing the strong policy in favor of deciding cases on the merits against the needs to resolve the trial courts' high volume of cases in a timely manner, holding that it is preferable to decide a case on its merits whenever possible, reserving dismissal as the ultimate sanction).

*Board of Adjustment of New Castle County v. Kwik-Check Realty.*[11] In that case, the Court differentiated between variances seeking to change the use of the property – a so called "use variance" – and one seeking an alteration of, for example, set back requirements – an "area variance." A "use variance" must undergo a detailed and exacting "hardship" analysis, while an area variance must pass a more relaxed "exceptional practical difficulty" analysis. The parties are further in agreement that this case involves an area variance and is therefore subject to the exceptional practical difficulty analysis.

The exceptional practical difficulty analysis requires the zoning board to consider the following "*Kwick-Check* factors":

*The nature of the zone in which the property lies.* Here, the property is in an R-3 zone, a zone the Board tells us is intended to promote single family homes and to avoid their conversion to multifamily units.[12]

*The character of the immediate vicinity and the uses contained therein.* Here, the community is one of mostly single family homes. The requested variance does not seek any alteration in the character of the vicinity; indeed, Appellant does not argue otherwise. While Appellant makes the point that the garage itself – authorized by the 1995 variance – is outsized compared to the

---

[11] 389 A.2d 1289, 1291 (Del. 1978).

[12] Board's Br. at 9.

8

neighborhood, that is proverbial water over the bridge at this point. Second story additions over one story garages behind row houses are nothing new to the City of Wilmington and indeed, the president of the neighborhood association, speaking on behalf of the homeowners, testified that he had made exactly such an improvement to his own residence.[13]

*Whether, if the restriction upon the applicant's property were removed, such removal would seriously affect such neighboring property and uses.* In this case, the next door neighbors' complaints are twofold. First, they say there are structural/engineering issues. But these issues were dealt with by the Board, which required the applicants to get a certified engineering report that the proposed addition would not undermine the structure of the garage. The applicants did so. The second complaint was that the second story addition would be asymmetrical with the one story garage on their side of the duplex, creating an unsightly lack of symmetry. Assuming that "symmetry" may be an element that the Board can and should look at in balancing the "seriousness" of the neighboring property and uses, it is quite clear that the Board did just that in their questions and deliberations. The real difficulty with Appellant's position is that they could hold hostage any improvement to their neighbor's property that would result in asymmetry with their own property. That cannot be the rule as it would render every property owner

---

[13] Appellant's Br., Ex. A at 17.

9

beholden to every adjoining property owner. The zoning board of adjustment exists exactly for the purpose of balancing the competing rights of these neighbors so that each can improve their property with the board exercising a meditative influence on the extremes. Indeed, the proceedings here reflect just such a process as the Board was careful to consider the character of the other surrounding properties as well as the input from other community members. Symmetry is probably preferable if it can be accomplished, but it cannot be the basis for denial of a variance that is otherwise reasonable.

Finally, the Board is to consider *whether, if the restriction is not removed, the restriction would create unnecessary hardship or exceptional practical difficulty for the owner in relation to his efforts to make normal improvements to the character of that use of the property which is a permitted use under the use provisions of the ordinance.* In *Kwik-Check,* the Supreme Court said, "under the exceptional practical difficulty test "[a] practical difficulty is present where the requested dimensional change is minimal *and* the harm to the applicant if the variance is denied will be greater than the probable effect on neighboring properties if the variance is granted."[14]

---

[14] *Kwik-Check,* 389 A.2d at 1291. *See also McGlaughlin v. Bd. Of Adjustment of New Castle County,* 984 A.2d 1190, 1192 (Del. 2009)(board should weigh "the potential harm to the neighboring properties by granting the variance against the potential harm to the property owner by denying it").

10

Here, the requested dimensional change is minimal – a setback from 15 feet to 7 feet, consistent with the setback variance already granted for the garage in 1995. In balancing the harm to the applicant against the harm to the "neighboring properties," the Board considered the testimony of two neighbors and the president of the neighborhood association, all of whom spoke for the variance, as well as the concerns of the Appellants. The Board concluded that the harm to the applicant would be greater than the harm perceived by the Appellant. But in balancing these considerations, the Board exercised a sensitive judgment that is not readily subject to appellate review. So long as the Board undertook its task in good faith, giving all parties an opportunity to be heard, and applied the considerations with fidelity, this Court is not in a position to second guess the Board's conclusions.

The Court well appreciates that these determinations are never simple and, where there is dissent at the hearing, it is particularly difficult to balance the interests involved. Home ownership is for many of us our single largest investment and a source of financial as well as emotional attachment. It is no easy task for a zoning board of adjustment to consider the competing interests involved, particularly where it involves adjoining neighbors, and to arrive at a result that pleases everyone. But the Court is satisfied that the Board considered the factors, balanced the relevant considerations and arrived at a decision that was within the

11

range of appropriate results. This Court will not engage in a *de novo* review of the evidence to reverse a board that functioned properly.

**IT IS SO ORDERED.**

_____
Judge Charles E. Butler