IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FRANK GREENE,                          )
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )        C.A. No. N15C-03-052 VLM
                                       )
ALLSTATE INSURANCE                     )
COMPANY,                               )
                                       )
        Defendant,                     )
                                       )

Submitted: September 25, 2017
Decided: November 9, 2017

## ORDER

**AND NOW TO WIT**, this 9th day of November, 2017, after ruling from the bench, upon consideration of the parties' representations at the pre-trial status conference immediately preceding trial on September 25, 2017, **IT IS HEREBY ORDERED** that Plaintiff's Complaint must be **DISMISSED** for the following reasons:

### *Factual and Procedural Background*

1.    Plaintiff, Frank Greene ("Plaintiff") is a self-represented litigant who was involved in a motor vehicle accident on March 6, 2013. This matter does not involve personal or bodily injuries.  Instead, the dispute is over additional monies

allegedly owed by Defendant Allstate Insurance Company ("Defendant" or "Allstate"), the insurer responsible for the total loss of Plaintiff's 2007 Toyota Tundra ("vehicle").

2.      Following the accident, the record shows various exchanges and communications between the parties where Plaintiff sent the vehicle's title to Allstate after he received two checks, presumably related to the property loss.[1] One check was for $12,684 for the total loss and the other for $250, reimbursing Plaintiff the amount of his property damage deductible.[2] Plaintiff deposited the checks in March and July of 2013, respectively.[3]

3.      Twenty months later, Plaintiff filed his Complaint on March 6, 2015.[4] He alleged he was not paid enough to cover the "actual cash value" of his vehicle. Therefore, he claims he is owed the difference between the actual cash value of his vehicle and the amounts he previously received for a total of approximately $9,000.

---

[1] Pl.'s Dep. at 17:11–21:10.

[2] *Id.* at 21:13–23:7, 26:14–27:9.

[3] *Id.*

[4] Compl.

2

4. Defendant maintained throughout the litigation that Plaintiff has settled his claim and filed a Motion for Summary Judgment on July 18, 2016. In response, Plaintiff merely stated he "did not plan to attend the hearing on the Motion."[5]

5. Plaintiff was instructed that his response did not provide the Court with specific reasons to excuse his appearance and that failure to show could result in dismissal of his case.[6] He appeared at the hearing and the Court gave him time to respond to the Motion for Summary Judgment. He was also reminded that he needed to comply with the Superior Court Rules of Civil Procedure. On December 1, 2016, ten days after oral arguments, Plaintiff responded to the Motion for Summary Judgment.[7]

6. Although Plaintiff's response was lacking under a proper Rule 56 analysis, Plaintiff survived Defendant's Motion for Summary Judgment *only* because this Court found that the sole case that Allstate relied upon in support of their motion was distinguishable from the facts of this case such that dismissal was inappropriate *at that time*.[8]

---

[5] *See* Pl.'s Ltr. re Mediation & Mot. for Summ. J. dated Sept. 29, 2016.

[6] *See* Court's Ltr. to Parties dated Oct. 6, 2016.

[7] *See* Pl.'s Notice to Court re Def.'s Mot. for Summ. J. dated Dec. 1, 2016.

[8] Distinguishable from *Price v. State Farm Mutual Insurance Co.*, Plaintiff here had not signed a release of claims and one of the two checks had been erroneously labeled as settlement for "uninsured motorist" claim. As such, this Court found there was a genuine issue of material fact that could be submitted to the jury on the issue of whether Plaintiff accepted in full satisfaction

3

7. At all times during the litigation, the Court has reiterated to Plaintiff during conferences, case status teleconferences, and from the bench the basic rules of evidence, concepts of hearsay, and how to present his matter to a jury. This was especially so when Plaintiff sought to introduce evidence without witnesses and through self-made exhibits created from unknown and known internet websites. These admonitions were memorialized in writing to remind Plaintiff that he needed to comply with all Rules of Evidence and the Superior Court Civil Rules.[9]

8. Trial was continued three times.[10] A January 23rd trial had to be continued to July 20th in order to give Plaintiff time to procure a witness and to order mediation.[11] This was done in an effort to further assist Plaintiff not only to reach a resolution, but to allow Plaintiff to hear from a neutral party what would be expected of him at trial. This was unsuccessful.

---

the amounts previously paid by Defendant, and if not, the issue could potentially be presented to a jury of whether Defendant could be held liable for more damages.

[9] *See* Court's Ltr. to Parties dated Oct. 6, 2016; Court's Ltr. Order dated Jan. 30, 2017; Court's Ltr. Order dated Feb. 7, 2017; Court's Ltr. Order dated Feb. 13, 2017; Court's Ltr. Order dated Feb. 15, 2017; Court's Ltr. Order dated July 19, 2017.

[10] The first continuance was due to Court closing for a snow storm. The other continuances are detailed *infra*.

[11] *See* Yvonne Takvorian Saville, Esq.'s Ltr. re Mediation dated Jan. 20, 2017; So Ordered Pre-Trial Stipulation dated Jan. 24, 2017.

4

9. On February 13, 2017, this Court, again, ruled in favor of Plaintiff when it denied Defendant's Motion to Strike Plaintiff's Witness.[12] Defendant had moved to strike this sole witness due to Plaintiff's failure to comply with the Court's trial scheduling order after Plaintiff identified, for the first time, Mr. Anthony Harris, in his February 8th Pretrial Stipulation, and did not disclose the scope or relevancy of Mr. Harris' testimony. This Court denied Defendant's motion on the basis that to exclude this testimony would result in dismissal, and such a sanction was not appropriate under *Drejka v. Hitchens Tire Service Inc.* or *Christian v. Counseling Resources Associates, Inc.*[13] Plaintiff was permitted to call Mr. Harris despite the untimeliness of naming him as a witness and his failure to comply with the scheduling order.

10. Trial was re-scheduled for July 20. Unfortunately, this trial date had to be moved to September 25 after Plaintiff contacted the Court one or two days earlier to request another continuance because his sole witness had a scheduling conflict that made the witness unavailable to appear.[14] Again, without his witness, he would be unable to present his case so the Court granted Plaintiff's request to September 25, and told Plaintiff he would not be granted any more continuances.

---

[12] *See* Court's Ltr. Order dated Feb. 13, 2017.

[13] *Christian v. Counseling Resource Assocs., Inc.*, 60 A.3d 1083 (Del. 2013); *Drejka v. Hitchens Tire Serv. Inc.*, 15 A.3d 1221 (Del. 2010).

[14] *See* Court's Ltr. to Parties dated July 19, 2017.

11.    On September 25, 2017, this Court met with the parties to determine what evidence was expected to be presented by Plaintiff in advance of trial primarily because of the above-mentioned issues.

12.    In the courtroom, the Court heard for the first time from defense counsel that he had taken the deposition of Plaintiff's sole witness, Mr. Harris, who could not testify regarding the actual cash value of the vehicle. The Court asked the witness himself and he confirmed that he was unable to offer any opinion or comment related to the actual cash value of the vehicle. Plaintiff agreed that Mr. Harris could not testify as planned.

13.    With no witnesses or additional evidence for the jury to consider, defense counsel raised his standing motion for what this Court accepted as his Rule 56 Motion for Summary Judgment. When the Court asked Plaintiff to respond to the Motion and how he expected to prove his case in the absence of any witnesses, he, again, maintained that his strategy would be to read car values from Kelley's Blue Book. This prompted an objection from defense counsel, and this Court agreed with Defendant that Plaintiff was not permitted to simply read evidence into the record. Without evidence, there was no choice but to dismiss.

### *Discussion*

14. Plaintiff has been a self-represented litigant throughout the course of this litigation. While there "is no different set of rules for *pro se* plaintiffs,"[15] the Court has been mindful of Plaintiff's status and has granted Plaintiff accommodations that did not affect the other party's substantive rights.[16] Nevertheless, there is only so much that can be done to accommodate a *pro se* litigant.

15. In determining the proper sanction for the unfortunate series of events that occurred in this case, under *Drejka*, this Court has discretion to control its caseload and enforce trial scheduling orders.[17] However, dismissal should be a remedy of last resort.[18] In weighing the propriety of dismissal as a sanction for a party's failure to adhere to deadlines, the Court considers:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an

---

[15] *Draper v. Medical Ctr. of Delaware*, 767 A.2d 796, 799 (Del. 2001).

[16] *See Maddox v. Isaacs*, 2013 WL 2297030, at *2 (Del. Super Ct. May 7, 2013), *aff'd*, 74 A.3d 654 (Del. 2013); *Alston v. State*, 2002 WL 184247, at *1 (Del. Super Ct. Jan. 28, 2002).

[17] *Drejka*, 15 A.3d at 1224.

[18] *Id.*

7

analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.[19]

16. The Delaware Supreme Court has held that dismissal may be warranted under the *Drejka* factors where the court has repeatedly instructed plaintiff on what to do and that failure to comply with any instructions could result in dismissal.[20] Applying the *Drejka* factors for a second time to this case, this Court found that dismissal was inevitable without a witness or admissible evidence.

17. As to the first factor, this Court had given Plaintiff ample opportunity and flexibility to be responsible for his case. The Court repeatedly reminded Plaintiff that he had an obligation to adhere to all rules and procedures of this Court and was fully responsible to comply with the pre-trial scheduling order as well as the pre-trial stipulation. In both instances, not only did he fail to comply, he often argued beyond the narrow scope of what he thought his damages were without a factual basis from which to do so, or without the understanding of how to present them to a jury. The admonishments from the Court appeared to fall on deaf ears.

18. As to the second factor regarding prejudice, this case has been continued on three occasions, twice to afford Plaintiff time to procure a witness and then make that witness available for trial when he had a last minute scheduling

---

[19] *Id.* (quoting *Minna v. Energy Coal S.p.A.*, 984 A.2d 1210, 1215 (Del. 2009)).

[20] *Adams v. Aidoo*, 58 A.3d 410, 412 (Del. 2013).

8

conflict. At all times, Defendant has been ready for trial and has had to call off out-of-state witnesses to accommodate the last minute rescheduling needs of Plaintiff. This Court considers that resources have been allocated by Defendant to defend this claim and recognizes the costs associated with not being able to bring closure to it or to properly defend this claim.

19. There was no history of dilatoriness or evidence of bad faith or willful conduct by the Plaintiff. Any delays in proceeding to trial were primarily due to inexperience or reasons beyond his control, such as the unavailability of his witness to appear for trial, or even worse, the inability of this witness to testify as to the main issue in dispute. He has been courteous and available for all court proceedings. Though he exhibited frustration at times, the Court was able to guide Plaintiff throughout the litigation, and provide flexibility in order to comply with the Court's orders. These orders included explicit instructions that, unfortunately, Plaintiff was unable to follow.

20. The Court does not believe alternative sanctions were an option. Plaintiff's contentions were narrow and his burden specific as to one issue. With no ability to meet his burden, no other sanctions were warranted. There would have been no way to limit or exclude evidence as there was no evidence. A fine or penalty would have added insult to injury and delayed the inevitable result of dismissal.

21. Finally, we turn to the merit of the claim. At all stages of these proceedings, defense counsel had maintained that Plaintiff could not prove his case and the lack of evidence mandated dismissal. This was most clear on the morning of trial when the Court learned there was insufficient evidence to put the issue before a jury under Superior Court Civil Rule 56.[21]

22. While the initial burden is on the moving party, that burden may be discharged by "pointing out to the court-that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof."[22] Plaintiff presented no evidence and bore the ultimate burden of proof. Therefore, the Court made its bench ruling that Defendant was entitled to judgment as a matter of law.

### *Conclusion*

Through no fault of his own, Plaintiff struggled to comply with the orders of the Court and the evidentiary rules in this case. It is clear that despite repeated

---

[21] Rule 56 mandates the granting of summary judgment upon a showing that "there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." SUPER. CT. CIV. R. 56(C). Courts should not "indulge in speculation and conjecture; a motion for summary judgment is decided on the record presented and not on evidence potentially possible." *In re Asbestos Litig.*, 509 A.2d 1116, 1118 (Del. Super. 1986) *aff'd sub nom. Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987). "To survive a motion for summary judgment, the plaintiff must present sufficient evidence from which a rational trier of fact could find in her favor." *Smith v. Delaware State Univ.*, 47 A.3d 472, 477–78 (Del. 2012).

[22] *Peak Property and Cas. Ins. Co. v. Speed*, 2010 WL 530072, at *3 (Del. Super. Ct. Feb. 12, 2010) (quoting *Singletary v. Penn. Dep't of Corrections*, 266 F.3d 186, 193 n. 2 (3d Cir. 2001) (citation omitted)).

10

instructions, he was unable to follow them and failed to present *any* evidence to meet his burden of proof, or present his case to a jury. To empanel a jury on this record would have been contrary to our rules of evidence and civil procedure, and a waste of already scarce judicial resources.

For the above stated reasons, this Court finds that the matter could not proceed to a jury as a matter of law and is, therefore, **DISMISSED**.

**IT IS SO ORDERED.**

Judge Vivian L. Medinilla

oc:   Prothonotary
cc:   All Counsel of Record (via e-filing)

11