# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

LORREN CHANDLER            )
                          )
            Plaintiff,     )
                          )
    v.                     )
                          )    C.A. No. K22C-12-017 NEP
BAYHEALTH MEDICAL         )
CENTER, INC.              )
                          )
            Defendant.     )

Submitted: November 1, 2024
Decided: December 4, 2024

## <u>**MEMORANDUM OPINION AND ORDER**</u>

*Upon Plaintiff's Motion To Extend Expert Evidence Deadline*
**DENIED**

*Upon Defendant's Motion For Partial Summary Judgment*
**GRANTED IN PART AND DENIED IN PART**

Gary W. Aber, Esquire, Wilmington, Delaware, *Attorney for Plaintiff*.

Stacey A. Scrivani, Esquire, Stevens & Lee, P.C., Wilmington, Delaware, *Attorney for Defendant.*

Theresa M. Zechman, Esquire (argued), Stevens & Lee, P.C., Lancaster, Pennsylvania, and Alexander V. Batoff, Esquire, Stevens & Lee, P.C., Philadelphia, Pennsylvania, *Of Counsel for Defendants*.

**Primos, J.**

## INTRODUCTION

Before the Court are two motions. Plaintiff Lorren Chandler moves to extend the plaintiff's expert evidence deadline to allow her to identify her treating physician as an expert and present expert evidence from him. Defendant Bayhealth Medical Center, Inc., moves for partial judgment on the pleadings, which the Court has converted into a motion for partial summary judgment pursuant to Superior Court Civil Rule 12(c). Defendant argues that Plaintiff should be judicially estopped from recovering monetary damages in this employment discrimination suit because she did not disclose her claim in an unrelated Chapter 13 bankruptcy proceeding. In the alternative, Defendant argues that plaintiff's total disability prior to her firing bars her from recovering back- or front-pay.

The Court finds that Plaintiff has not shown good cause to extend the expert evidence deadline[1], and that Defendant would be unfairly prejudiced by such extension. Therefore, Plaintiff Lorren Chandler's Motion to Extend Expert Evidence Deadline is **DENIED**. Given the Court's disposition of Plaintiff's motion, Plaintiff has not demonstrated, and will be unable to demonstrate, that her preexisting total disability was caused by Defendant. Thus, Defendant's Motion For Partial Summary Judgment is **GRANTED** as to Plaintiff's claims for front- and back-pay. However, Defendant's Motion For Partial Summary Judgment is **DENIED** as to Plaintiff's other claims for monetary damages, as the Court finds judicial estoppel inappropriate under the unique circumstances of this case.

---

[1] Hereinafter, with the exception of references to the title of Plaintiff's Motion, the Court will refer to the deadline at issue as the "expert discovery deadline" rather than the "expert evidence deadline," in keeping with the Scheduling Order, which references "Plaintiff's expert discovery cutoff" and "Defendant's expert discovery cutoff."

## I.    BACKGROUND[2]

### A. Facts

This Opinion concerns two otherwise unrelated legal proceedings—Plaintiff Lorren Chandler's instant suit against her former employer, Defendant Bayhealth Medical Center, Inc., for racial discrimination and retaliation, and her Chapter 13 bankruptcy. The bankruptcy was filed prior to the events giving rise to Plaintiff's suit against Defendant but did not close until after Plaintiff filed the instant Complaint. The chronology bears some explanation.

### 1.  Plaintiff's Employment-Related Claims

On May 29, 2018, Defendant hired Plaintiff.[3] Defendant first allegedly discriminated against Plaintiff in January 2020, and Plaintiff first allegedly suffered retaliation in March 2020 when she was transferred to another role in Defendant's employ.[4] Plaintiff details various grievances thereafter, culminating in a dispute over her organization of a going-away party for a colleague on November 30, 2020, ostensibly in violation of Defendant's Covid-19 protocols.[5] According to Plaintiff, Defendant's employees unjustifiably "interrogated" her about this event on December 7, 2020.[6] Plaintiff then took leave.[7] Her doctor's note, signed by Athena Brotman, M.D., stated that she should be "excused from work, starting today, 12/11/2020, through and including 12/18/2020. She is cleared to return to work as of 12/21/2020."[8] However, Plaintiff's disability became permanent before she was

---

[2] Citations in the form of "(D.I. __)" refer to docket items.
[3] Compl. (D.I. 1) ¶ 6; Answer (D.I. 3) ¶ 6. Pl.'s Sur-Reply Memo. In Opp'n To Def's Partial Mot. For J. On The Pleadings (D.I. 75), Ex. 1 ¶ 3 (Aff. of Lorren Chandler).
[4] Compl. (D.I. 1) ¶¶ 17–27.
[5] *Id.* at ¶¶ 28–46.
[6] *Id.* at ¶¶ 46–47.
[7] *Id.* at ¶ 48.
[8] App. to Pl.'s Answering Br. In Opp'n To Def's Partial Mot. For J. On The Pleadings (D.I. 46), LC059. Plaintiff's Complaint indicates that her doctor "immediately took her out of work for three months since the [discrimination] aggravated a preexisting chronic illness . . . rendering her unfit

terminated.[9] According to the treating notes of her physician Dr. Satyajeet Roy, Plaintiff has been "on permanent disability since December 10, 2020."[10] Defendant terminated Plaintiff's employment on December 22, 2020.[11]

### 2. Plaintiff's Bankruptcy

Plaintiff filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the District of Delaware on January 15, 2018.[12] The bankruptcy plan was confirmed on June 18, 2018.[13] It was modified on August 7, 2018 to account for Plaintiff' unrelated personal injury settlement in another case, the proceeds from which were partially distributed to Plaintiff's bankruptcy creditors.[14] The Trustee issued a Certification of Completion of Plan and Request for Discharge in Plaintiff's bankruptcy in September of 2023.[15] The Bankruptcy Court issued an Order of Discharge on November 27, 2023, and the bankruptcy case was closed as fully administered on January 4, 2024.[16]

---

and unable to return to work, and to this day to [sic] being disabled.") Compl. ¶ 47. However, nothing in the record supports the proposition that Plaintiff's doctor recommended three months of convalescence, and Dr. Brotman's note contradicts the claim.

[9] Compl. (D.I. 1) ¶ 47 ("[T]he harassment, aggravation, and stress aggravated a preexisting chronic illness of the Plaintiff, rendering her unfit and unable to return to work, and to this day being disabled."); *id.* at ¶ 51 ("After the Plaintiff became medically disabled the defendants thereafter [sic] formally terminated her employment on December 22, 2029 [sic].").

[10] Pl.'s Mot. To Extend Expert Evidence Deadline (hereinafter "Plaintiff's Motion"), Exs. 3, 9 (D.I.s 66, 72). It is notable that the first note indicating such permanent disability was not signed until July 28, 2022, more than 18 months after the disability allegedly became permanent, and well after Plaintiff left Defendant's employ, though the Court will not weigh the credibility of Dr. Roy's opinion given the procedural posture of this case.

[11] Compl. (D.I. 1) ¶ 51; Answer (D.I. 3) ¶ 51.

[12] App. to Pl.'s Answering Br. In Opp'n To Def's Partial Mot. For J. On The Pleadings (D.I. 46), LC001, LC004.

[13] App. to Pl.'s Answering Br. In Opp'n To Def's Partial Mot. For J. On The Pleadings (D.I. 46), LC001, LC006.

[14] *Id.* at LC001; Pl.'s Sur-Reply Memo. In Opp'n To Def's Partial Mot. For J. On The Pleadings (D.I. 75), Ex. 1 ¶ 4 (Aff. of Lorren Chandler).

[15] App. to Pl.'s Answering Br. In Opp'n To Def's Partial Mot. For J. On The Pleadings (D.I. 46), LC001, LC011.

[16] *Id.* at LC001, LC011. Over the course of the bankruptcy, Plaintiff paid in a net sum of $46,619.45. Nonetheless, the bankruptcy discharged $19,299.07 of unsecured claims without full

4

At no time after filing the instant Complaint did Plaintiff disclose her bankruptcy to Defendant. In response to an interrogatory asking her to "[i]dentify and describe any lawsuit (other than the present suit), charge, complaint, claim, proceeding or action of any type filed by, on behalf of, or against you with any federal, state, or local governmental agency, or in any court," Plaintiff disclosed only a 2011 workers' compensation claim and a 2017 motor vehicle accident case.[17] Defendant did not learn of Plaintiff's bankruptcy through efforts of counsel until "on or about November 16, 2023."[18] In her September 30, 2024 deposition, Plaintiff admitted to being involved in at least one other claim, and Defendant has provided evidence of various others, all of which preceded the instant Complaint.[19] Defendant also highlights that Plaintiff did not disclose her aborted 2005 bankruptcy filing, and that Plaintiff "filed an objection to [a previous employer's] Chapter 11 bankruptcy based on her then-pending suit against the company," claiming entitlement to $722,000.[20] In an affidavit, Plaintiff claims that she was "unaware that the potential assets in question . . . would have to be listed . . . since there was [sic] no assurances that [she] would ever receive any monies."[21]

Notably, Plaintiff's counsel in this action was also initially unaware of her bankruptcy, but took relatively expeditious action upon learning of the potential judicial estoppel issue. Plaintiff's counsel learned of the bankruptcy in March of

---

payment. *Id.* at LC053.

[17] Reply Br. In Further Support Of Def.'s Partial Mot. For Judgment On The Pleadings (D.I. 50), Ex. A, Interrog. 36.

[18] Reply Br. In Further Support Of Def.'s Partial Mot. For Judgment On The Pleadings (D.I. 50), 3–4.

[19] *See generally* Letter to Judge Primos Regarding Pl.'s Counsel, Gary Aber's Oct. 7, 2024 Correspondence With Enclosures (D.I. 120).

[20] Reply Br. In Further Support Of Def.'s Partial Mot. For Judgment On The Pleadings (D.I. 50), Ex. A, "Ex. 27," 3–5.

[21] Pl.'s Sur-Reply Memo. In Opp'n To Def's Partial Mot. For J. On The Pleadings (D.I. 75), Ex. 1 ¶¶ 6, 9 (Aff. of Lorren Chandler).

2024.[22]  He sent a letter to the bankruptcy trustee on March 26.[23]  The letter set forth the chronology of the instant case and explained Defendant's estoppel argument.[24] In closing, Plaintiff's counsel stated that he "wrot[e] to seek direction from you, as Trustee for Chapter 13 Bankruptcy matters to determine if there is an interest in pursuing this post-petition matter, which *may*, [sic] result in a judgment in Ms. Chandler's favor[.]"[25]

The trustee responded the same day as follows:

Thank you for your letter dated March 26, 2024 regarding the post-petition wrongful termination/employment discrimination claim . . . . Please be advised that as the Chapter 13 Trustee, I have no interest in pursuing this post-petition matter nor asserting a claim upon [sic] behalf of the bankruptcy estate.  Moreover, the District of Delaware Chapter 13 Confirmation Order does not require a debtor to amend their schedules to report or list a post-petition cause of the [sic] action. Therefore, the debtor would be free to pursue post-petition claims without disclosure or permission of the Bankruptcy Court.[26]

### 3. Plaintiff's Discrimination Filings Before Bankruptcy Closure

It is undisputed that Plaintiff took a variety of actions with regard to Defendant's alleged discrimination and retaliation prior to the closure of her bankruptcy.  On July 23, 2021, Plaintiff filed a Charge of Discrimination with the Delaware Department of Labor and with the Equal Employment Opportunity Commission.[27]  On December 14, 2022, Plaintiff filed her Complaint with this Court. In the Complaint, Plaintiff detailed the allegations set forth in Section 1, *supra*, and averred that Defendant, through "harassment, aggravation, and stress aggravated a preexisting chronic illness . . . rendering her unfit and unable to work, and to this

---

[22] App. to Pl.'s Answering Br. In Opp'n To Def's Partial Mot. For J. On The Pleadings (D.I. 46), LC012 (Aff. of Gary W. Aber).

[23] *Id.* at LC012, LC014.

[24] *Id.* at LC014–15.

[25] *Id.* at LC015.

[26] *Id.* at LC016.

[27] Compl. (D.I. 1) ¶ 3–4.

day being disabled."[28]

### 4. Causation Of Plaintiff's Disability

Also relevant to this case are Plaintiff's efforts to show that Defendant caused her disability, or the absence of such efforts. The record includes two sets of treatment notes from Dr. Roy. The first, dated July 28, 2022, indicated that Plaintiff was, and had been, suffering from "thyrotoxicosis due to multinodular goiter/Graves' disease, as well as thyroid ophthalmopathy . . . pain in her eyes . . . decline in vision . . . [and] thyroid carcinoma for which she underwent total thyroidectomy."[29] The notes went into additional detail both as to Plaintiff's condition, and as to tests conducted after an ultrasound on May 13, 2021 that revealed "residual thyroid gland."[30] Dr. Roy opined that "[t]hese problems have significantly jeopardized [Plaintiff's] general health primarily due to the visual decline, persistent pain in the neck area post thyroid surgery, eye fatigue, pain in the eyeball, eye swelling, nausea, generalized fatigue, etc. She is [sic] on permanent disability since 12/10/2020."[31] No mention was made of any stressors aggravating Plaintiff's symptoms or resulting in the disability.

Dr. Roy's second note, proffered on August 15, 2024, was similar to the first, except that it noted a consult on August 2, 2024, and included the following passage: "Prior to 12/10/2020, patient went through severe stress at her job which followed by [sic] termination from her job that aggravated her symptoms and significantly jeopardized her health due to [the symptoms described previously and] diabetes, mellitus, etc. necessitating her to go on permanent disability since 12/10/2020."[32] No additional explanation is given for how the "severe stress" aggravated Plaintiff's

---

[28] Compl. ¶ 47.
[29] Plaintiff's Motion, Ex. 3 (D.I. 66).
[30] *Id.*
[31] *Id.*
[32] Plaintiff's Motion, Ex. 9 (D.I. 72).

symptoms, or when and how Dr. Roy came to know of said stress.

Dr. Roy's second set of notes came nearly two years after the first, and after Plaintiff's February 8, 2024, expert discovery deadline. Prior to that deadline, Plaintiff never identified Dr. Roy as an expert witness. While Plaintiff earlier averred that her counsel attempted, by phone call, to secure Dr. Roy's testimony prior to Plaintiff's expert discovery deadline,[33] Plaintiff's counsel acknowledged at oral argument that this was not true.[34]

Instead, Plaintiff's counsel first attempted to contact Dr. Roy by fax on March 28, 2024. In the fax, counsel requested Dr. Roy's "medical opinion, to a reasonable degree of medical probability, meaning more than 50% probable whether there is a causing [sic] relationship between the treatment of [Plaintiff] by her employer, her termination, and the medical conditions in which you treated and stated have disabled her."[35]

Only *afterward* did Plaintiff's counsel (on an unclear date) telephone Dr. Roy and speak with his assistant. While speaking with the assistant, counsel overheard someone (presumably Dr. Roy) saying that he was unable or unwilling to assist.[36] Finally, on August 7, 2024, counsel sent Dr. Roy a letter by FedEx, which referred to the March 28 letter as his "previous correspondence," and indicated "it ha[d] been some time since our last communication."[37] The letter also indicated that "[i]t appear[ed] that there ha[d] been a failure on [his] part to communicate the type of opinion [he was] seeking,"[38] The letter clarified that Plaintiff needed an opinion that her medical condition was aggravated by the alleged discrimination, rather than

---

[33] Plaintiff's Motion (D.I. 59), 5.
[34] Unless otherwise indicated, the following chronology is drawn from Plaintiff's counsel's statements to the Court during oral argument on November 1, 2024.
[35] Plaintiff's Motion, Ex. 4 (D.I. 67).
[36] *Accord* Plaintiff's Motion (D.I. 59), 5.
[37] Plaintiff's Motion, Ex. 8 (D.I. 71).
[38] *Id.*

caused thereby, and that this resulted in her disability.[39]

## B. Procedural History

Plaintiff filed her Complaint on December 12, 2022.[40] Following attempted mediation, Defendant requested a scheduling order on October 17, 2023.[41] After a teleconference, the Court issued an order on November 9, 2023 (the "First Scheduling Order").[42] The order specified that Plaintiff's expert discovery deadline, or "cutoff," would be February 8, 2024.[43]

On May 3, 2024, Defendant moved for partial judgment on the pleadings ("Defendant's Motion"), averring that Plaintiff was barred by judicial estoppel from recovering monetary damages because she had failed to disclose the instant claim in her bankruptcy, and, alternatively, that Plaintiff was barred from recovering back- and front-pay damages "because she claims she has been fully disabled and unable to work since *before* her termination from employment with Defendant, and . . . cannot prove that Defendant caused her permanent disability."[44] Extensive briefing followed.

In the midst of briefing on Defendant's Motion, on June 13, 2024, Defendant moved to extend "all *outstanding* scheduling order dates and deadlines by sixty (60) days[.]"[45] On June 18, the Court held an office conference concerning Defendant's motion to extend the First Scheduling Order.[46] The parties' resultant stipulated amendment extended various dates, but made no mention of Plaintiff's expert discovery deadline, which had already passed.[47] The Court approved the stipulated

[39] *Id.*
[40] Compl. (D.I. 1).
[41] *See* D.I. 15.
[42] D.I. 17.
[43] *Id.*
[44] Br. In Support of Def.'s Partial Mot. For J. On The Pleadings (D.I. 24) (emphasis in original).
[45] Def.'s Mot. To Extend Scheduling Order Dates (D.I. 32) (emphasis supplied).
[46] *See* D.I. 36 (judicial action form).
[47] *See* D.I. 37 (stipulation); D.I. 39 (order granting stipulation). The amended order included the

amendment, and the second scheduling order (the "Scheduling Order") was issued on June 24, 2024. Plaintiff did not alert the Court to her desire to extend the expert discovery deadline until August 23, 2024, when Plaintiff filed her Motion To Extend Expert Evidence Deadline (hereinafter "Plaintiff's Motion"). The parties also briefed Plaintiff's motion.

At an office conference on August 23, 2024, the Court converted Defendant's Motion into a motion for summary judgment pursuant to Superior Court Civil Rule 12(c).[48] On November 1, 2024, the Court heard oral argument regarding both Plaintiff's Motion and Defendant's Motion.[49] The Court deferred ruling on either motion pending this written Opinion.

---

following dates: Discovery Completion Date, 10/01/2024; Discovery Motion Deadline, 10/29/2024; Motions in Limine to Include Daubert Motions, 11/20/2024; Responses to Motions Deadline, 12/04/2024; Pretrial Stipulation Deadline, 12/24/2024; Pretrial Conference & Trial Fee Due, 1/08/2025 (or as soon as practical thereafter); Jury Prayers Due, 3/04/2025; Trial Calendar Conference, 3/07/2025; Trial, 3/10/2025. D.I. 39.

[48] D.I. 58 (judicial action form).

[49] D.I. 135 (judicial action form).

## II. PLAINTIFF'S MOTION TO EXTEND EXPERT EVIDENCE DEADLINE

### A. Legal Standard

Modification of a scheduling order prior to the final pretrial conference requires a showing of good cause,[50] while a modification thereafter shall be granted "only to prevent manifest injustice."[51] To establish good cause, the movant must show "that the discovery deadlines cannot be met despite his or her diligent efforts."[52] Once this showing has been made, "the Court must consider whether prejudice would be suffered by the non-moving party."[53] "'Good cause' is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party.'"[54]

Plaintiff, however, contends that the applicable standard for her motion, pursuant to the Supreme Court's *Coleman v. PricewaterhouseCoopers, LLC* decision, requires a balancing of various factors, including the risk of trial delay, in addition to the good cause analysis.[55] Plaintiff misapprehends the applicable legal standard,

---

[50] *See In re Asbestos Litigation*, 228 A.3d 676, 681 (Del. 2020) (en banc) ("Good cause is the proper standard under Delaware law, and the General Scheduling Order expressly requires a 'showing of good cause' to modify the scheduling order.'"); *Coleman v. PricewaterhouseCoopers, LLC*, 902 A.2d 1102, 1107 (Del. 2006) (en banc) (finding that the lower court did not abuse its discretion by declining to modify a scheduling order, citing an absence of good cause). *See also Kent v. Dover Ophthalmology ASC., LLC,* 2018 WL 1940450, at *2 (Del. Super. Apr. 12, 2018) (ORDER); *Vick v. Khan*, 2018 WL 656379, at *1 (Del. Super. Jan. 31, 2018) (ORDER); *In re Asbestos Litigation*, 2012 WL 2389898, at *1 (Del. Super. June 22, 2012); *Candlewood Timber Grp. LLC v. Pan American Energy LLC*, 2006 WL 258305, at *2 (Del. Super. Jan. 14, 2006).

[51] Super. Ct. Civ. R. 16(e); *Bumgarner v. Verizon Delaware, LLC*, 2014 WL 595344, at *2 (Del. Super. Jan. 14, 2014).

[52] *Hammer v. Howard Med., Inc.*, 2017 WL 1170795, at *1 (Del. Super. Feb. 14, 2017) (citing *Candlewood*, 2006 WL 2389898, at *4).

[53] *Id.* (citing *Moses v. Drake*, 109 A.3d 562, 566 (Del. 2015)).

[54] *Coleman*, 902 A.2d at 1107 (quoting 3 James Wm. Moore, et al., *Moore's Federal Practice* § 16.14[1] [b] (3d ed. 2004)) (internal quotation and modification omitted).

[55] *See id.* at 1106 n.6 ("Delaware courts have consistently engaged in a balancing of factors including considering the original scheduling order, whether there is good cause to allow the

because the *Coleman* factors apply only to supplemental expert reports: both *Coleman*[56] and the decisions it relied upon[57] concerned supplementation. Here, no expert report was offered prior to the expiration of Plaintiff's expert discovery deadline. Indeed, Dr. Roy was never identified as a potential expert prior to that deadline. Thus, the good cause standard applies, rather than the *Coleman* factors. Under the appropriate standard, and for the reasons that follow, Plaintiff's motion fails.

### B. Analysis
#### 1. Plaintiff has failed to show good cause.

Plaintiff has not shown good cause to extend the expert discovery deadline. Plaintiff was not diligent in securing the testimony of her treating physician. The need to do so was foreseeable, since Plaintiff claimed in the Complaint that Defendant's alleged discrimination exacerbated her health issues, which resulted in her permanent disability.[58] Despite this, Plaintiff's counsel did not reach out to Dr. Roy until after the expert discovery deadline had passed.[59] Plaintiff's need to extend the deadline is the result of her own lack of diligence, and these failings are not excusable.

The facts of this case are analogous to those of *Candlewood Timber Group, LLC v. Pan American Energy, LLC*, in which this Court likewise declined to find good

---

supplement, the prejudice to the opposing party, and possible trial delay.") (citing *Candlewood Timber Group, LLC v. Pan American Energy, LLC*, 859 A.2d 989 (Del. 2004)).

[56] *Id.* at 1105 (noting that the Court was reviewing the trial judge's decision to strike a supplemental report).

[57] *Id.* at 1106 n.6 (citing *Candlewood*, 859 A.2d 989; *Chase Manhattan Mortgage Corp. v. Advanta Corp.*, 2004 WL 422681 (D. Del. Mar. 4, 2004); *Union Carbide Chems. v. Shell Oil Co.*, 270 F. Supp. 2d 519 (D. Del. 2003)).

[58] Compl. (D.I. 1) ¶ 47 ("[T]he harassment, aggravation, and stress aggravated a preexisting chronic illness of the Plaintiff, rendering her unfit and unable to return to work, and to this day being disabled."); *id.* at ¶ 51 ("After the Plaintiff became medically disabled the defendants thereafter [sic] formally terminated her employment on December 22, 2029 [sic].").

[59] Plaintiff's Motion, Ex. 4 (D.I. 67).

cause to extend the expert report deadline.[60]  In *Candlewood*, the plaintiff learned, over one month before the deadline, that its expert witness was "unavailable" for his deposition.[61]  As such, the plaintiff needed to substitute another witness.[62] Nonetheless, the plaintiff waited until more than three months after the deadline to seek modification of the scheduling order.[63]  The plaintiff "explained that because they did not have a new expert report, and, therefore, no new expert, [it] '[was not] ready to bring [the matter] to [the court's] attention[.]'"[64] The Court held that the plaintiff had not demonstrated diligent effort to comply with the scheduling order: its expert's "potential 'unavailability' was known" well prior to the deadline, and the plaintiff "ha[d] known for years of its need for a[n] . . . expert."[65]  Though the plaintiff contended that the substitution of a different expert did not prejudice the defendant,[66] the Court nonetheless declined to extend the deadline:  while the question of prejudice was not dispositive of the Court's "good cause" inquiry, the defendant would face "some prejudice" by the delay.[67]  Trial was scheduled just over 15 weeks after the Court entered its opinion.[68]

As in *Candlewood*, Plaintiff knew, or should have known, of the issue with her

---

[60] 2006 WL 258305.

[61] *Candlewood*, 2006 WL 258305, at *1 ("According to [plaintiff, the expert], before his deposition was able to be taken in early August 2005 [pending a September 20 expert report deadline], became 'unavailable' and has not responded to [plaintiff's] recent attempts to contact him.  In its motion, [plaintiff] merely said that [the expert] was 'unavailable' without giving any reason.").

[62] *Id.*

[63] *Id.* at *4.

[64] *Id.* at *1 (some alterations in original).

[65] *Id.* at *5.

[66] *Id.* at *3.

[67] *Id.* at *4 ("The Court agrees that lack of prejudice to another party can, in appropriate cases, be a factor . . . but the Court's inquiry does not end with consideration of that one factor.").  The defendant argued that it would be prejudiced because it "would not have time before trial to respond to a new expert report . . . nor . . . [t]o adequately prepare any defenses applicable[.]"  *Id.* at *3.  However, the Court did not explain why the delay worked such prejudice—only that it was "perhaps not to the degree claimed[.]"  *Id.* at *5.

[68] *Id.* at *2.

expert well before the expert discovery deadline. Plaintiff's expert discovery deadline, or "cutoff," per the Court's order, was February 8, 2024.[69] By that time, Plaintiff's claim had been pending for more than a year. In the Complaint, Plaintiff claimed that Defendant's conduct "aggravated a preexisting chronic illness . . . rendering her unfit and unable to return to work[.]"[70] Though Plaintiff's motion somewhat misleadingly suggests that Dr. Roy's December 10, 2020, letter "stated that she was permanently disabled . . . from the events" giving rise to this case, and that her witness "fell apart" thereafter,[71] the letter made no such causal claim,[72] and Dr. Roy was never designated as an expert witness. Even if these things were not true, however, as the Court noted in *Candlewood*, the inability or unwillingness of a witness to support a party's case does not excuse that party from updating the Court and timely seeking any necessary extension.[73]

Given the mismatch between the Complaint and Dr. Roy's first set of treatment notes, Plaintiff's efforts to comply with the Scheduling Order were inadequate. It should have been obvious that Dr. Roy would need to supplement his notes—or, failing that, that Plaintiff would need to secure another expert. Nonetheless, Plaintiff's counsel first faxed Dr. Roy to request an opinion on March 28, 2024.[74] Plaintiff's counsel did not follow up to, in his words, "properly communicate the type of opinion [he was] seeking" until August 7, 2024.[75] Though Plaintiff's counsel suffered a serious accident in the interim, this was not until April 22, approximately

---

[69] First Discovery Order (D.I. 17).

[70] Compl. (D.I. 1) ¶ 47.

[71] Plaintiff's Motion (D.I. 59), 5.

[72] Plaintiff's Motion, Ex. 3 (D.I. 66).

[73] Plaintiff's argument that her counsel "did not seek to extend [sic] Expert Discovery Deadline since it could not be done in good faith since he had neither an expert opinion . . . nor hopes of finding one" is unavailing for this reason. *See* Plaintiff's Motion (D.I. 59), 6.

[74] Plaintiff's Motion, Ex. 4 (D.I. 67).

[75] Plaintiff's Motion, Ex. 8 (D.I. 71).

ten weeks after the deadline.[76]  Plaintiff did not file her motion until August 23, 2024, more than six months after the deadline—approximately double the delay in *Candlewood*.

Also persuasive is this Court's recent decision in *Hammer v Howard Medical, Inc*.  In *Hammer*, the plaintiff requested, by letter, an extension of the discovery period several days before it expired.[77]  The Court did not respond to this letter because it was not in the proper form for such a motion.[78]  The Court faulted the plaintiff for failing to file a formal motion before the expiration of the discovery period and for delaying over a month thereafter.[79]  This was even more problematic, the Court implied, because the plaintiff had approximately two months in which to take the actions necessitating the extension—i.e., deposing the defendant's managing partner—before the deadline.[80]  The Court thus denied the plaintiff's motion to reopen discovery.[81]

Here, unlike in *Hammer*, Plaintiff made no attempt—formally or informally—to apprise the Court of the need for an extension of the expert discovery deadline. Plaintiff had ample opportunity to do so, either by motion or at the parties' June 18 conference with the Court, convened for the express purpose of discussing extensions to the scheduling order.  Additionally, as in *Hammer*, Plaintiff had the opportunity to avoid the need for an extension had she taken the appropriate action prior to the deadline.  In short, Plaintiff's behavior is comprehensively more objectionable than that at issue in *Hammer*.

---

[76] Plaintiff's Motion, Ex. 5 (D.I. 68).
[77] 2017 WL 1170795 at *2.
[78] *Id.* at *1.
[79] *Id.* at *2.
[80] *Id.* at *1.  The Court suggested that the plaintiff sought the extension for the improper purpose of attempting to depose the defendant's managing partner in Delaware, rather than Mississippi, as required under the facts of the case.  *Id.* at *2.
[81] *Id.* at *4.

15

In light of the above, Plaintiff has failed to show good cause to extend the expert discovery deadline. This is fatal to her motion.

## 2. Defendant would likely be unfairly prejudiced by an extension.

While not dispositive because Plaintiff has not shown good cause, the Court is also cognizant of the fact that Defendant would suffer substantial unfair prejudice by extension of the expert discovery deadline. Thus, even had Plaintiff shown good cause, the Court would deny her motion. The Court has previously found unfair prejudice where granting an extension would result in a need to reschedule the trial, would require the defendant to prepare a response to a new claim, or would require filing of new or duplicative dispositive motions.[82] Each of these concerns is implicated in this case.

Here, granting an extension to Plaintiff would likely result in a need to reschedule the trial. Dr. Roy's opinion on causation in his second set of treatment notes fails to set forth its bases, and it is therefore likely that it would need to be supplemented to satisfy the requirements of Superior Court Civil Rule 26.[83] While the Court has generally accepted treatment notes in lieu of a formal expert report,[84]

---

[82] *Id.* at *2 (finding prejudice where extending the discovery period would create "an abundance of procedural problems," result in a delay of the trial, and would require the parties "to redo already filed dispositive motions or forgo using the newly discovered information."); *Caniford v. Wilson*, 2005 WL 1950901, at *1 (Del. Super. June 17, 2005) (finding prejudice where plaintiff sought to assert permanent injury in medical negligence case for the first time after the third extended discovery deadline, even though the trial date would not be impacted).

[83] *See* Super. Ct. Civ. R. 26(b)(4)(A).

[84] *See Setya v. Petito*, 2020 WL 2148382, at *2 (Del. Super. May 4, 2020) (("Medical notes may suffice when the information contained therein satisfies the requirements of Rule 26(b)(4)(A) and provides the other side with adequate notice of the expert's expected testimony."); *Winn v. Clements*, 2017 WL 780878, at *3 (Del. Super. Feb. 27, 2017) ("[I]t does not stand that the Supreme Court meant to impose a requirement under Rule 26(b)(4)(A) that an expert must author a formal report in all instances even where the trial scheduling order does not impose such a requirement.") (collecting cases); *Diaz v. Malarkey*, 2015 WL 3508064, at *1 (Del. Super. June 3, 2015) ("Office note" by plaintiff's treating physician "suffices as a necessary report, the four corners of which limit his testimony," but defendant was "free" to "challenge the relevancy or reliability [thereof] by a subsequent motion."); *but see Stephenson v. Big Oaks Trailer Park*, 2019 WL 4273809, at *3 (Del Super. Sept. 10, 2019) ('[T]he medical records provided here do not

16

Dr. Roy's notes do not explain, and nor is it plainly evident from them, why he concluded that Plaintiff's condition was exacerbated by Defendant's alleged actions. As the Supreme Court has held, an expert opinion on causation may not be conclusory, but must instead explain the bases thereof.[85] Under these circumstances, Plaintiff would therefore need to supplement her treating physician's report, whereas Defendant would need time to depose him and presumably obtain its own expert to rebut his testimony.[86] The consequence would be significant delay and additional expense for Defendant.

Also relevant to the Court's prejudice analysis is the fact that granting Plaintiff's motion would require Defendant's Motion to be refiled. Resolution of Defendant's Motion turns, in part, on whether Plaintiff has proven that her disability was caused by Defendant's actions. Granting Plaintiff's Motion would therefore necessitate, as the Court found important in *Hammer*,[87] that Defendant file a new motion with new argument in light of Plaintiff's expert's testimony.

In light of the above, granting Plaintiff's Motion would work significant and

---

contain the experts' opinions regarding the cause of Plaintiff's injuries . . . . Further, medical records are not expert reports. Instead of providing expert reports, Plaintiffs disclosed the medical records kept by each of their identified medical experts and stated that each expert would testify consistent with that record. The records which Plaintiffs disclosed are medical records, not expert reports.") (citing *Hill v. DuShuttle*, 58 A.3d 403, 406 (Del. 2013); *Drejka*, 15 A.3d at 1223).

[85] *Manerchia v. Kirkwood Fitness and Racquetball Clubs, Inc.*, 992 A.2d 1237, 2010 WL 1114927, at *3 (Del. Mar. 25, 2010) (ORDER) (holding that a doctor's "belatedly submitted opinion . . . [was] insufficient, because it [was] conclusory. [The doctor] offer[ed] no explanation as to how the facts and records that he relied upon (i.e., [the plaintiff's] medical records, clinical perspective and laboratory studies) prove that [the plaintiff's] cellulitis was a direct result of his immersion in the [defendant's] hot-tub. [The doctor] did not testify that [the plaintiff's] condition amounts to a 'signature disease' nor did he address other possible causes[.]") (internal citation omitted).

[86] At oral argument, Defense counsel indicated that this was the case.

[87] *Hammer*, 2017 WL 1170795, at *2 ("Howard would suffer prejudice as a result of an extended discovery period. As Defendants point out, allowing discovery to continue past the set deadline would lead to an abundance of procedural problems and other hurtles [sic] . . . . If the deadline was [sic] extended, the parties would need to redo already filed dispositive motions or forgo using the newly discovered information.").

17

unfair prejudice on Defendant.

### 3. Denial of Plaintiff's Motion is the appropriate sanction for her lack of diligence and failure to show good cause.

Plaintiff also argues, citing various cases—notably *Dillulio v. Reece*[88]—that denial of her motion is not the proper sanction for any failings on her counsel's part pursuant to *Drejka v. Hitchens Tire Service*[89] and *Christian v. Counseling Research Associates*.[90] Plaintiff's reliance on these cases is misplaced. *Drejka* and its progeny established a form of lenity for late identification of experts and their reports *where the alternative was dismissal of the case*, as in medical negligence cases.[91] Indeed, one of the factors referenced in *Drejka* is "the effectiveness of sanctions other than dismissal."[92] To put a finer point on it, the primary case that Plaintiff cites, *Dillulio*, explicitly declined to decide whether *Drejka* would apply in circumstances such as this case, and cast doubt on the possibility.[93]

*Dillulio* was a negligence action in which the defendants conducted a medical examination of one of the plaintiffs but failed to provide a written disclosure that the examining doctor would serve as an expert witness.[94] The Court initially granted the defense's motion to exclude the doctor's testimony.[95] On reargument, the parties

---

[88] 2014 WL 1760318 (Del. Super. Apr. 23, 2016).

[89] 15 A.3d 1221 (Del. 2010).

[90] 60 A.3d 1083 (Del. 2013).

[91] *See Drejka*, 15 A.3d at 1224 (Noting that "[t]he sanction of dismissal is severe and courts are and have been reluctant to apply it except as a last resort.") (quoting *Hoag v. Amex Assurance Co.*, 953 A.2d 713, 717) (alterations in original); *Cannon v. Poliquin*, 2020 WL 1316833, at *2 (Del. Super. Mar. 5, 2020) ("[I]n *Drejka* . . . The Delaware Supreme Court provided courts with six factors to use *to determine if discovery violations warrant dismissing a case*.") (emphasis supplied, citation omitted); *Dover Ophthalmology*, 2018 WL 1940450, at *2.

[92] *Drejka*, 15 A.3d at 1224 (quoting *Minna v. EnergyCoal S.p.A.*, 984 A.2d 1210, 1215 (Del. 2009) (evaluating whether the Court of Chancery abused its discretion by entering default judgment)).

[93] *Dillulio*, 2014 WL 1760318, at *4.

[94] *Id.* at *1. *See also id.* at *4 ("The Court rejects Defendants' argument that the . . . medical examination notice constituted an expert disclosure sufficient to satisfy the Scheduling Order. Nowhere does the letter mention that [the doctor] would be testifying as a defense expert[.]").

[95] *Id.* at *2.

18

agreed that *Drejka* and *Christian* established the "appropriate framework for determining whether the preclusion of [the doctor's] testimony [was] the appropriate sanction."[96] The Court therefore consented to this framework, but noted that it "[did] not believe that those cases [were] exactly on point, as both cases involved a plaintiff's failure to comply with discovery and dismissal of the plaintiff's case as a sanction—*i.e.*, the plaintiff's entire case was at stake."[97]

> [T]he Court is loathe [sic] to hold that a balancing of the *Drejka* factors is necessary in every instance where a party's expert witness is at risk of being excluded on the basis of failure to comply with a scheduling order, as the *Drejka* analysis seems geared towards those cases where only the "ultimate sanction" of dismissal is implicated. The more general "just and reasonable" discretionary determination should be enough in this case.[98]

This Court distinguished *Drejka* and *Christian* on much this basis in *Kent v. Dover Ophthalmology ASC., LLC*.[99] The Supreme Court has subsequently suggested that *Drejka* is inapplicable even when denying a modification to the scheduling order would *indirectly* result in dismissal.[100] *Drejka* is accordingly not applicable to Plaintiff's Motion. Plaintiff's discrimination case is not at stake, and

---

[96] *Id.*

[97] *Id.* at *4.

[98] *Id.*

[99] 2018 WL 1940450, at *2 ("Here, the Defendants' entire case is not at stake.").

[100] *In re Asbestos Litigation*, 228 A.3d 676, 682–83 (Del. 2020) (en banc) (holding that the Superior Court did not err in using the good cause standard to deny the plaintiffs' motion to delay the trial date, where the plaintiff did not raise the possible applicability of *Drejka* until appeal); *id.* at 683 n.36 ("The Superior Court would not have erred if it refused to consider the *Drejka* factors when deciding the plaintiffs' motion to change the trial date. In *Drejka*, this Court reversed the Superior Court's dismissal of the plaintiff's complaint for submitting an expert report five months late. We reversed because 'the sanction against [the plaintiff] was inappropriate,' and '[i]n essence, the trial court entered a default judgment against [the plaintiff] as a sanction for violating the court's Scheduling Order.' Here, neither the Special Master nor the Superior Court judge sanctioned the plaintiffs' counsel or effectively entered a default judgment. Instead the Special Master and the Superior Court recognized the reality that no remedial measures could fix the problem the plaintiffs faced if they continued to pursue their case [since the plaintiff had passed away and was unavailable to provide needed fact testimony].").

can proceed even though, as a result of her failure to procure an expert opinion, she cannot recover for back- or front-pay, as explained in Part III of this Opinion.

## III. DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Superior Court Civil Rule 56(c), summary judgment is appropriate only when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." In reviewing such a motion, the Court must view the record in the light most favorable to the non-movant.[101] "When material facts are in dispute, or 'it seems desirable to inquire more thoroughly into the facts to clarify the application of the law to the circumstances,' summary judgment will not be appropriate."[102]

### A. Recovery Of Lost Wages During Total Disability

The Third Circuit, in *Starceski v. Westinghouse Elec. Corp.*, noted that, "[a]s a general rule, an employment discrimination plaintiff will not be allowed back pay during any periods of disability, and an employer who has discriminated need not reimburse the plaintiff for salary loss attributable to the plaintiff and unrelated to employment discrimination."[103] An exception arises, however, when the defendant's actions caused the disability.[104] Because Delaware antidiscrimination law is so similar to Title VII of the federal Civil Rights Act, "Delaware takes its interpretative lead . . . from the Federal interpretations" when there is no contrary state authority.[105] The Court is not aware of any contrary state authority pertinent to

---

[101] *McGlothlin v. Petrunich Oral & Maxillofacial Surgery*, 2022 WL 2783811, at *3 (Del. Super. July 15, 2022) (citing *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99–100 (Del. 1992)).

[102] *Id.* (quoting *Ebersole v. Lowengrub*, 180 A.2d 467, 468–70 (Del. 1962)).

[103] 54 F.3d 1089, 1101 (3d Cir. 1995) (quoting *Mason v. Ass'n for Indep. Growth*, 817 F. Supp. 550, 555 (E.D. Pa. 1993)) (internal quotation and alteration in original omitted).

[104] *McKenna v. City of Phila.*, 636 F. Supp. 2d 446, 446 (E.D. Pa. 2009) (citing *Savarese v. Agriss*, 883 F.2d 1194, 1206 n.16 (3d Cir. 1989)).

[105] *Paitsel v. State*, 2016 WL 1424828, at *5 (Del. Super. Apr. 7, 2016) (citing *Giles v. Fam. Ct. of Delaware*, 411 A.2d 599, 601–602 (Del. 1980) ("While the McDonnell Douglas test was developed in the context of Title VII cases . . . it is appropriate for a [state] action as well, because

this issue.

Thus, applying federal case law, Plaintiff cannot recover back- or front-pay damages, because her disability predated her termination by Defendant and there is no evidence either that the disability has abated or that Defendant caused the disability.[106] Plaintiff has not contested, either in briefing or at oral argument, Defendant's assertion that Plaintiff's disability would preclude such damages absent a showing of causation. Indeed, at oral argument, Plaintiff's counsel conceded that Plaintiff could not recover lost wages without expert testimony on causation. Plaintiff has not produced such expert testimony and, pursuant to this Court's denial of Plaintiff's Motion, will not be able to do so. Therefore, Plaintiff's disability precludes recovery for lost wages.

---

the language of the Delaware statute is substantially the same as the Title VII language defining an unlawful employment practice.")).

[106] *Accord Shomide v. ILC Dover, Inc.*, 521 F. Supp. 2d 324, 335 (D. Del. 2007) ("Plaintiffs [sic] disability is unrelated to his employment, and he has been found totally disabled by the [Social Security Administration]. Accordingly, he is not entitled to back pay from . . . the day his total disability began, through . . . the day of his lay-off. Similarly, plaintiff's request for front pay must be dismissed since plaintiff continues to receive benefits for a disability that prevents him from being gainfully employed.") (citing *Hatter v. Fulton*, 1997 WL 411623, at *6 (S.D.N.Y. July 21, 1997); *Bonura v. Chase Manhattan Bank*, 629 F. Supp. 353, 362 (S.D.N.Y. 1986)); *see also Smith v. Presidio Networked Sols., Inc.*, 2024 WL 4094273, at *7–9 (E.D. Pa. Sept. 5, 2024) (holding plaintiff ineligible for back-pay during period of total disability).

## B. Judicial Estoppel
### 1. Legal standard

Judicial estoppel is an "extraordinary,"[107] "discretionary, [and] equitable remedy"[108] that "acts to preclude a party from asserting a position inconsistent with a position previously taken in the same or earlier legal proceeding . . . to protect the integrity of the judicial proceedings."[109] As the Delaware Supreme Court has explained, judicial estoppel applies only where (1) a party's current position contradicts a position that the party previously took; and (2) the party "successfully induced" a court to adopt its earlier position in a judicial ruling[110] or accept that position as a basis for its ruling.[111] "The party's prior position will be considered a 'basis' for the court's ruling where (i) the prior position 'contributed to the court's decision'; (ii) the court 'relied' on the party's prior position; or (iii) the party's newly inconsistent position 'contradicts' the court's ruling[.]"[112]

---

[107] *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 784 (3d Cir. 2001) ("Judicial estoppel is an extraordinary remedy that should be employed only when a party's inconsistent behavior would otherwise result in a miscarriage of justice.") (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996)) (cleaned up).

[108] *Darden v. New Castle Motors, Inc.*, 2014 WL 1392969, at *1 (Del. Super. Mar. 27, 2014), *aff'd*, 103 A.3d 515, 2014 WL 5574307 (Del. Oct. 31, 2014) (TABLE) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)); *accord In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010) ("Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion . . . . [A] given set of circumstances does not . . . necessarily compel its application.").

[109] *Motorola Inc. v. Amkor Tech., Inc.*, 958 A.2d 852, 859 (Del. 2008) (citing *State v. Chao*, 2006 WL 2788180, at *9 (Del. Super. Sept. 25, 2006)).

[110] *Id.* at 859–60 (citing *Siegman v. Palomar Med. Techs., Inc.*, 1998 WL 409352, at *3 (Del. Ch. July 13, 1998)); *accord Bulger*, 243 F.3d at 782–784 (holding judicial estoppel inappropriate where a party's position was never "accepted or adopted" by a court).

[111] *La Grange Cmtys., LLC v. Cornell Glasgow, LLC*, 74 A.3d 653, 2013 WL 4816813, at *4 (Del. Sept. 9, 2013) (TABLE); *VIII-Hotel II P Loan Portfolio Hldgs., LLC v. Zimmerman*, 2013 WL 5785290, at *3 (Del. Super. Sept. 19, 2013).

[112] *In re Rural/Metro Corp. Stockholders Litigation*, 102 A.3d 205, 247 (Del. Ch. 2014) (citing *Julian v. E. States Const. Serv., Inc.*, 2009 WL 1211642, at *7 (Del. Ch. May 5, 2009); *Zimmerman*, 2013 WL 5785290, at *3; *Banet v. Fonds de Regulation et de Controle Café Cacao*, 2010 WL 1066993, at *4 (Del. Ch. Mar. 12, 2010)).

## 2. Analysis

### a. Plaintiff did not take clearly inconsistent positions in the instant and prior proceeding.

As a threshold matter, judicial estoppel is only appropriate where the party against whom it is asserted has taken irreconcilably inconsistent positions.[113] When a debtor fails to disclose a cause of action as an asset in bankruptcy, such nondisclosure is only inconsistent with later claims when it was clear at the time that the debtor had a duty to disclose said cause of action.[114] This is an extension of the principle that judicial estoppel is intended to deter and punish litigants who change their positions "in bad faith—i.e., with intent to play fast and loose with the court."[115] Here, it was unclear that Plaintiff had a duty to disclose the instant cause of action because (1) it did not arise until well after the filing of her bankruptcy petition;[116]

---

[113] *Kane*, 628 F.3d at 638 (quoting *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003), *cert. denied*, 541 U.S. 1043 (2004)).

[114] *Gluhic-Popovic v. Am. Med. Sys., Inc.*, 2019 WL 4846335, at *4 (Del. Super. Oct. 1, 2019); *Roberts v. Vara (In re Roberts)*, 659 B.R. 271, 282 (Bankr. W.D. Pa. 2024) at 282 ("One factor is that a party's later position must be clearly inconsistent with its earlier position.") (citing *New Hampshire*, 532 U.S. at 750). *But see Roberts*, 659 B.R. at 283 (holding it "beyond dispute" that the plaintiff took irreconcilable positions when she "affirmatively answered 'no' to questions in her bankruptcy filings regarding the existence of actual and potential claims against third parties . . . [and] also apparently denied the existence of any legal claims when examined under oath by the Chapter 7 Trustee," even though she acted *pro se* and was evidently overwhelmed by the process).

[115] *Kane*, 628 F.3d at 638 (quoting *Krystal Cadillac*, 337 F.3d at 319) (emphasis omitted); *Ryan*, 81 F.3d at 362 ("Asserting inconsistent positions does not trigger the application of judicial estoppel unless 'intentional self-contradiction is . . . used as a means of obtaining unfair advantage.'") (quoting *Scarano v. Central R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953)).

[116] *See Gluhic-Popovic*, 2019 WL 4846335, at *4 ("Various courts have addressed this issue, and reached different results regarding the apparent conflict between these Chapter 13 provisions . . . . The Court finds that the uncertainty in statutory interpretation prevents Defendant from establishing that Plaintiff represented 'clearly inconsistent' positions between different courts. The Court concludes that it is unclear whether Plaintiff was required to disclose this action following confirmation, but prior to closing.") (citing *City of Chicago v. Fisher (In re Fisher)*, 203 B.R. 958, 960–62 (N.D. Ill. 1997)). As a legal matter, it does appear likely that Plaintiff had a duty to update her filings. *See Bosco v. C.F.G. Health Systems, LLC*, 2007 WL 1791254, at *3 (D.N.J. June 19, 2007) ("The duty to disclose is an obligation that continues throughout the course of a Chapter 13 proceeding") (internal citations omitted); *Lewis v. Eberle & BCI Servs., LLC*, 2013 WL 4483529, at *2 (D.N.J. Aug. 19, 2013) ("The parties agree that [plaintiff] took inconsistent positions by failing to disclose her interest in this lawsuit . . . . [I]f a debtor has enough information *prior to*

and (2) even the trustee in her bankruptcy does not believe such disclosure was required.[117] Though the Court does not foreclose the possibility that the trustee is mistaken, his confusion makes Plaintiff's omission more excusable, as she can scarcely be held to a higher standard than a professional in the field.[118]

Given the foregoing, and taking the facts in the light most favorable to Plaintiff, she could reasonably have believed that she was not obligated to disclose the present action.[119] Though courts in the Third Circuit have applied a rebuttable

---

*confirmation* to suggest that a *possible* claim exists, then it is a 'known' claim that must be disclosed in the bankruptcy petition.") (citing *DePasquale v. Morgan Stanley Smith Barney LLC*, 2011 WL 3703110, at *6 (D. N.J Aug. 23, 2011) (emphasis in original); *Denise v. Saxon Mortg. Servs. Inc.*, 738 Fed. Appx. 47, 51 (3d Cir. 2018) (finding irreconcilably inconsistent positions and a presumption of bad faith where the plaintiff "failed to explain how she learned of the possible causes of action . . . only after she received the Order of Discharge."). In the Third Circuit, only claims that are "hypothetical," or "so tenuous as to be fanciful" need not be listed as an asset in bankruptcy. *Krystal Cadillac*, 337 F.3d at 323; *Bartel v. A-C Liab. Tr.*, 2016 WL 8730162, at *6 (E.D. Pa. Dec. 16, 2016). What is relevant to the instant action, however, is not whether Plaintiff had a legal duty, but whether any omission on her part was the result of a bad faith attempt to mislead the Bankruptcy Court—in other words, whether she could not, or did not, reasonably misunderstand her disclosure duties. *See Bartel*, 2016 WL 8730162, at *6 (holding that omission did not warrant judicial estoppel where said omission "may very well have been based on a good faith mistake of what was required by the documents, or a simple incorrect assessment of the viability of [the plaintiff's] claims[.]") (internal citation omitted).

[117] App. to Pl.'s Answering Br. In Opp'n To Def's Partial Mot. For J. On The Pleadings (D.I. 46), LC016.

[118] *See Hutchins v. I.R.S.*, 67 F.3d 40, 44 (3d Cir. 1995) (noting that a debtor is not required to "supervise and double check the actions of the trustee" because the former is merely held to the standard of "reasonable diligence in completing schedules") (citing *In re R.E. Lee & Sons, Inc.*, 95 B.R. 316 (Bankr. M.D. Pa. 1989)).

[119] Defendant asserts that Plaintiff's failure to disclose her multifarious other cases in discovery and her decision to intervene in a former employer's bankruptcy when it was to her benefit, but not (by Defendant's contention) in her own Chapter 13 where it would harm her interest, proves her bad faith. The Court is not persuaded. First, there is a distinction between asserting one's own claim *as a creditor* and disclosing a claim *to one's creditors* when that claim is accrued after the opening of bankruptcy, separate and apart from the question of personal benefit. Second, while Plaintiff's failure to disclose in the present case should not be construed to her advantage, because such construction would present a moral hazard (i.e., a perverse incentive), not all of the things Plaintiff failed to disclose were self-evidently damaging to her. The Court could (but does not for the reasons just stated) conclude that this is evidence that Plaintiff's nondisclosure was merely negligent. Under the totality of the circumstances, the evidence of Plaintiff's bad faith is equivocal, and the Court is required given the procedural posture to give Plaintiff the benefit of the doubt.

presumption of bad faith—i.e., intentionality—to nondisclosure in bankruptcy cases,[120] such a presumption is not appropriate under the unique facts of this case. Neither inadvertent omission nor error justifies imposition of judicial estoppel.[121] The Court therefore will not impose it here.

> **b. Defendant has not proven that the Bankruptcy Court made any decision in reliance on Plaintiff's representation that the instant cause of action did not exist.**

Even had Plaintiff taken an inconsistent position before the Bankruptcy Court, she would not be judicially estopped from recovering in this action. It was Defendant's burden to prove that the Bankruptcy Court relied upon a false statement by Plaintiff,[122] and Plaintiff has provided affirmative evidence that her nondisclosure had no impact on the bankruptcy proceeding. Viewing the facts in the light most favorable to the non-movant, Plaintiff's nondisclosure did nothing to prejudice her creditors, mislead the Bankruptcy Court, or benefit her.

Simply showing that a plaintiff filed an incorrect bankruptcy form does not definitively prove that the Bankruptcy Court relied on a false statement.[123]

---

Moreover, given the Court's decision on this issue, Plaintiff's Motion to Strike Defendant's Letter of October 8, 2024, Purporting to Supplement Defendant's "Re-Reply Brief" is rendered moot. (Plaintiff's Motion to Strike is found at D.I. 121; Defendant's October 8 letter is found at D.I. 120.)

[120] *See, e.g.*, *Roberts*, 659 B.R. at 284 (citing *Krystal Cadillac*, 314 F.3d at 321); *Lewis*, 2013 WL 4483529, at *3; *Coles v. Carlini*, 2013 WL 3811642, at *10–11 (D. N.J. July 22, 2013).

[121] *Ryan*, 81 F.3d at 362 ("[T]he doctrine of judicial estoppel does not apply 'when the prior position was taken because of a good faith mistake rather than as a part of a scheme to mislead the court.'") (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C. Cir. 1980)).

[122] *See Motorola*, 958 A.2d at 859.

[123] *See M.R. v. B.R.*, 2012 WL 4863000, at *4 (Del. Fam. May 23, 2012) ("Alternatively, *Baldwin* suggests that the mere discharge of debts does not equate with an acceptance of every position in the bankruptcy petition 'simply because the bankruptcy petition was incorrectly completed. Accordingly, based on the evidence presented, this Court cannot conclude 'that the Court was successfully induced to adopt in a judicial ruling.'") (citing *Baldwin v. Silver*, 196 P.3d 170, 173 (Wash. Ct. App. 2008)) (emphasis supplied); *see also Ryan*, 81 F.3d at 363 (declining to impose judicial estoppel where there was "no evidence that the nondisclosure played any role in the confirmation of the plan or that disclosure of the potential claims would have led to a different result.").

Persuasive here is the Superior Court's rationale in *Gluhic-Popovic v. American Medical Systems, Inc.*,[124] which emphasized the inappropriateness of judicial estoppel when a plaintiff's creditors are not harmed by nondisclosure. In *Gluhic-Popovic*, as here, the plaintiff failed to disclose her products liability claim against the defendant in her unrelated Chapter 13 bankruptcy proceeding.[125] Also as here, the plaintiff "'acquired [her] cause of action after confirmation of her plan . . . but before its closing or dismissal[.]'"[126] After the defendant brought a motion for summary judgment claiming judicial estoppel, the plaintiff reopened the bankruptcy case.[127] In coordination with the bankruptcy trustee, the plaintiff "arranged . . . for the damages to be distributed to the estate in the event of recovery. Thus, the detriment, if any, to the creditors of the bankrupt estate would be mitigated[,] [and] [t]he exact harm suffered by Defendant [was] unclear."[128]

*Gluhic-Popovic* is precisely on point with the instant case, except for one distinction: when Plaintiff's counsel contacted the trustee, the latter indicated that he had no interest in reopening the bankruptcy and that, in his view, "the District of Delaware Chapter 13 Confirmation Order does not require a debtor to amend their schedules to report or list a post-petition cause of the [sic] action. Therefore, the debtor would be free to pursue post-petition claims without disclosure or permission of the Bankruptcy Court."[129] From this the Court concludes that, if Plaintiff had disclosed her cause of action immediately upon accruing it, the trustee would not have pursued it, and nondisclosure therefore did nothing to prejudice Plaintiff's

---

[124] 2019 WL 4846335.

[125] *Id.* at *1.

[126] *Id.* at *5.

[127] *Id.* at *1.

[128] *Id.* at *5. *See also id.* ("The Court finds no unfair detriment to the creditors or the Defendant, or unfair advantage to the Plaintiff.").

[129] Appx. to Pl.'s Answering Br. In Opposition To Defendant's Partial Motion For Judgment On The Pleadings, LC016.

creditors.

Plaintiff's counsel specifically inquired as to whether the trustee had "an interest in pursuing this post-petition matter[.]"[130]  The Court finds that it would be inequitable to punish Plaintiff simply because the trustee in this case, unlike in *Gluhic-Popovic*, declined to reopen the bankruptcy, i.e., for a decision outside her control.[131]  Defendant may dispute the trustee's understanding of the law, but it would not serve the purposes of judicial estoppel to penalize Plaintiff for the trustee's errors, if any.[132]  It is sufficient for this purpose that Plaintiff's creditors were not placed in any worse position than if she had disclosed the instant action when and in the manner that Defendant claims she should have.  Holding otherwise would confer an unjustifiable windfall on Defendant, which would ultimately run counter to

---

[130] App. to Pl.'s Answering Br. In Opp'n To Def's Partial Mot. For J. On The Pleadings (D.I. 46), LC015.  The instant case is therefore distinct from *Lewis*, 2013 WL 4483529, at *3 (faulting the plaintiff for waiting until after the court ruled on the defendant's motion for summary judgment to re-open the bankruptcy proceeding).

[131] For the first time in its Reply Brief, Defendant asserts that the trustee's letter does not constitute requisite formal abandonment of the cause of action.  Reply Br. In Further Support Of Def.'s Partial Mot. For Judgment On The Pleadings (D.I. 50), 9 (citing *Killmeyer v. Oglebay Norton Co.*, 817 F. Supp. 2d 681, 688–89 (W.D. Pa. 2011) (noting a statutory requirement of notice and hearing prior to abandonment in Chapter 7 proceedings); *Prekop v. PNC Bank*, 2013 WL 169730, at *2 (W.D. Pa. Jan. 16, 2013); *Cole v. Convergys Customer Mgmt. Grp., Inc.*, 2013 WL 2151586, at *1, *4 (D. Kan. May 6, 2013) (judicial estoppel applied where plaintiff showed trustee her EEOC right to sue letter, but "never fully disclosed the scope of her claims to the trustee" because she omitted her state law cause of action)).  By implication, the instant cause of action would belong to the bankruptcy estate, and Plaintiff would not have authority to bring suit on her own behalf.  *See Prekop*, 2013 WL 169730, at *2–3 (granting motion to dismiss in part because the plaintiff "attempt[ed] to recover damages . . . for his own personal benefit which should have inured to the benefit of his [Chapter 13] creditors.").  Even assuming that Defendant is correct that the trustee has not appropriately abandoned the cause of action, the Court does not consider whether Plaintiff has standing to bring suit.  Defendant has not moved to dispose of the case on these grounds, and indeed requests the inconsistent remedy of estopping Plaintiff from recovering damages, rather than dismissal.

[132] *Cf. Roberts*, 659 B.R. at 280 ("[C]ourts have held that when the objective of reopening a case is to address the administration of an omitted asset, *any perceived advantage gained by a debtor through non-disclosure is nullified by the appointment of a trustee to oversee the assets' administration.*") (citing *In re Daniel*, 205 B.R. 346, 349 (Bankr. N.D. Ga. 1997)) (emphasis supplied).

Plaintiff's creditors' interests.[133]

### c. Additional considerations favor denying Defendant's Motion.

As the United States Supreme Court has observed, there is no set, "inflexible," or "exhaustive formula" for the applicability of judicial estoppel.[134] This Court therefore has the discretion to consider additional factors to determine whether estoppel is necessary to prevent a miscarriage of justice.[135] Relevant here, a defendant should not delay in raising the issue of judicial estoppel when such delay benefits its defense at the expense of the Bankruptcy Court and the plaintiff's creditors. In other words, judicial estoppel is not an offensive weapon to be tactically deployed at the most opportune moment.[136]

Defendant's delay in raising estoppel weighs against its position. Defendant

---

[133] *See Darden*, 2014 WL 1392969, at *1 ("[G]iving Defendant a bye confers a windfall on Defendant, it punishes Plaintiff, and it may punish Plaintiff's creditors, who may have recourse if Plaintiff shorted them."). Defendant attempts to distinguish *Darden* on the ground that "the defendant, which previously moved for summary judgment on judicial estoppel grounds without success, attempted to assert judicial estoppel again after it lost at trial." Reply Br. In Further Support Of Def.'s Partial Mot. For Judgment On The Pleadings (D.I. 50), at 8. This ignores two facts. First, as Defendant concedes, the *Darden* Court rejected the judicial estoppel argument in a bench ruling prior to trial. Darden v. New Castle Motors, Inc., C.A. No. N12C-01-219, D.I. 40 at 15:4–13, 39:11–15 (transcript of bench decision denying the motion without prejudice and inviting supplemental briefing). Second, the written *Darden* opinion was prompted by a motion to reargue that was also brought prior to trial. Darden v. New Castle Motors, Inc., C.A. No. N12C-01-219, D.I. 41 (motion for reargument); Darden v. New Castle Motors, Inc., C.A. No. N12C-01-219, D.I. 47 (judicial action form for bench decision denying motion with letter opinion to follow trial). *Darden*'s reasoning did not rely on the premise that the motion was untimely or would give the losing defendant a second bite at the apple.

[134] *New Hampshire*, 532 U.S. at 751 (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d at 1166 (4th Cir. 1982) (alteration in original)).

[135] *See Krystal Cadillac*, 337 F.3d at 319 ("[W]e have consistently stated that the doctrine should only be applied to avoid a miscarriage of justice.") (citing *Bulger*, 243 F.3d 773).

[136] *See Roberts*, 659 B.R. at 282 ("[T]he doctrine 'is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims,' nor is it 'a sword to be wielded by adversaries unless such tactics are necessary to secure substantial equity.'" (quoting *Ryan*, 81 F.3d at 358, 365)); *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 109 (3d Cir. 1999) ("Judicial estoppel is . . . a defensive weapon loosed to protect the integrity of the court's processes . . . . A trial court should avail itself of its inherent sanctioning powers only when absolutely necessary.").

learned of Plaintiff's bankruptcy on or about November 16, 2023.[137] The bankruptcy did not close until January 4, 2024.[138] Had Defendant raised the estoppel issue before the bankruptcy closed, many of the complications addressed in this Opinion would have been avoided. Of course, the delay was not long, and Defendant was entitled to a reasonable time to research and formulate the estoppel defense before raising it. Likewise, Defendant is not Plaintiff's legal counsel, and some fault must lie with Plaintiff for neither disclosing the bankruptcy nor anticipating the issue of estoppel, however rarely raised. Thus, this consideration does not weigh heavily in the Court's analysis.

---

[137] Reply Br. In Further Support Of Def.'s Partial Mot. For Judgment On The Pleadings (D.I. 50), 3–4.
[138] App. to Pl.'s Answering Br. In Opp'n To Def's Partial Mot. For J. On The Pleadings (D.I. 46), LC001, LC011.

**CONCLUSION**

Plaintiff has not shown good cause to extend the expert discovery deadline, and such an extension would unfairly prejudice Defendant. Granting an extension would therefore be inappropriate. As a result, Plaintiff cannot offer expert testimony that Defendant caused her disability, and she is precluded from recovering for back- and front-pay damages. However, the Court finds that Plaintiff's failure to disclose the instant Complaint in her bankruptcy does not merit judicial estoppel, and that the doctrine cannot therefore preclude her from recovering all monetary damages.

**WHEREFORE**, for the foregoing reasons, Plaintiff Lorren Chandler's Motion to Extend Expert Evidence Deadline is **DENIED**. Defendant Bayhealth Medical Center, Inc.'s Motion For Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**


_____
Noel Eason Primos, Judge


NEP/tls
*Via File & ServeXpress*
oc: Prothonotary
cc: Counsel of Record

30